**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

WENDY GRAHAM, MARIA HÖHN, MIA
MASK, CINDY SCHWARZ, AND DEBRA
ZEIFMAN, on behalf of themselves and all others
similarly situated,

       Plaintiffs,

          -against-

VASSAR COLLEGE,

       Defendant.

Civil Action No. 23-CV-7692

**PLAINTIFFS' OPPOSITION TO
DEFENDANT'S PARTIAL MOTION TO
DISMISS THE SECOND AMENDED
COMPLAINT**

## TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ........................................................................................................... 1

II.     BACKGROUND ............................................................................................................. 3

    A.      Vassar Has for Decades Knowingly and Systemically Underpaid Its
        Female Full Professors............................................................................................ 4

    B.      In 2019, New York Amended Its Equal Pay Law to "Lessen the Burden"
        on Workers and Encourage "More" Cases Like this One..................................... 6

III.    LEGAL STANDARD....................................................................................................... 7

IV.     ARGUMENT ................................................................................................................... 8

    A.      Vassar Continues to Rely on Irrelevant Federal Equal Pay Act Authorities. ........ 8

    B.      Plaintiffs Sufficiently Plead a Claim under the New York Equal Pay Law. ....... 10

    C.      Vassar Establishes Nothing by Citing Plaintiffs' Objections to Vassar's
        Improper Interrogatories. ..................................................................................... 16

V.      CONCLUSION............................................................................................................... 17

2954337.4

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Anderson News, L.L.C. v. Am. Media, Inc.*,
    680 F.3d 162 (2d Cir. 2012)......................................................................................8

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)...........................................................................................7, 8

*Becker v. Gannett Satellite Info. Network, Inc.*,
    10 Fed. App'x. 135 (4th Cir. 2001) .........................................................................8

*Carey v. Foley & Lardner*,
    577 Fed. App'x 573 (6th Cir. 2014) .........................................................................8

*Durand v. Excelsior Care Grp., LLC*,
    No. 19-cv-2810 (KAM)(SJB), 2020 WL 7246437 (E.D.N.Y. Dec. 9, 2020)...........................9

*E.E.O.C. v. Port Auth. of New York & New Jersey*,
    768 F.3d 247 (2d Cir. 2014)............................................................................1, 8, 15

*Eisenhauer v. Culinary Inst. of Am.*,
    84 F.4th 507 (2d Cir. 2023) ..........................................................................9, 10, 11

*Ellis v. Google, LLC*,
    No. CGC-17-561299, 2021 WL 4169813 (Cal. Super. Ct. May 27, 2021)......................12, 14

*Faughnan v. Nassau Health Care Corp.*,
    No. 219CV03171RJDRLM, 2021 WL 1566138 (E.D.N.Y. Mar. 18, 2021)..................2, 9, 15

*Forsberg v. Pac. Nw. Bell Tel. Co.*,
    840 F.2d 1409 (9th Cir. 1988) .................................................................................8

*Kassman v. KPMG LLP*,
    No. 11 CIV. 3743 (LGS), 2020 WL 4003367 (S.D.N.Y. July 15, 2020) .................................8

*Khwaja v. Jobs to Move Am.*,
    No. 119CV07070JPCSDA, 2021 WL 4927140 (S.D.N.Y. Mar. 26, 2021) ...........................9

*Lavin-McEleney v. Marist Coll.*,
    239 F.3d 476 (2d Cir. 2001)...................................................................................16

# TABLE OF AUTHORITIES
### (continued)

Page

*Moazzaz v. MetLife, Inc.*,
No. 19-CV-10531 (JPO), 2021 WL 827648 (S.D.N.Y. Mar. 4, 2021)......................14, 15, 17

*Phillip v. Univ. of Rochester*,
316 F.3d 291 (2d Cir. 2003).....................................................................................8

*Phillips Petroleum Co. v. Shutts*,
472 U.S. 797 (1985).................................................................................................12

*Rasmussen v. The Walt Disney Co.*,
No. 19STCV10974, 2024 WL 454593 (Cal. Super. Ct. Jan. 30, 2024)............................12, 14

*Siler-Khodr v. Univ. of Texas Health Sci. Ctr. San Antonio*,
261 F.3d 542 (5th Cir. 2001) ...................................................................................15

*Solomon v. Fordham Univ.*,
No. 18 Civ. 4615 (ER), 2020 WL 1272617 (S.D.N.Y. Mar. 17, 2020)............................9, 15

*Spencer v. Virginia State Univ.*,
919 F.3d 199 (4th Cir. 2019), *as amended* (Mar. 6, 2019) ...................................9, 15

*Stern v. State Univ. of N.Y.*,
No. 16-cv-5588 (NGG)(LB), 2018 WL 4863588 (E.D.N.Y. Sept. 30, 2018) .........................9

*Suzuki v. State Univ. of N.Y. Coll. at Old Westbury*,
No. 08-cv-4569 (TCP), 2013 WL 2898135 (E.D.N.Y. June 13, 2013)
.......................................................................................................9, 12, 15, 17

*Taylor v. Vermont Dep't of Educ.*,
313 F.3d 768 (2d Cir. 2002).....................................................................................16

*Werst v. Sarar USA Inc.*,
No. 17-CV-2181 (VSB), 2018 WL 1399343 (S.D.N.Y. Mar. 16, 2018).................................9

*Wheatley v. Wicomico Cnty.*,
390 F.3d 328 (4th Cir. 2004) ...................................................................................9

**Statutes**

N.Y. Lab. Law § 194 ...............................................................................................10

2954337.4

**TABLE OF AUTHORITIES**
**(continued)**

Page

**Other Authorities**

Senate Bill S5248B (2019-2020 Leg. Sess.)..............................................................................7, 10

2954337.4

Plaintiffs Wendy Graham, Maria Höhn, Mia Mask, Cindy Schwarz, and Debra Zeifman ("Plaintiffs") submit this opposition to the Federal Rule of Civil Procedure ("Rule") 12(b)(6) motion to dismiss Plaintiffs' Second Amended Complaint, ECF No. 39 ("SAC"), filed by Defendant Vassar College ("Vassar" or the "College"), ECF No. 41 ("Mot.").

## I.   <u>INTRODUCTION</u>

Over two pre-motion letters to the Court, Vassar initially raised six arguments for dismissal of Plaintiffs' gender discrimination complaint against the College.  ECF No. 19 ("First Ltr."); ECF No. 35 ("Second Ltr.").  Though none of these arguments presented a legitimate basis for dismissal, Plaintiffs responded to all six through amended complaints in an effort to avoid spending the Court's and parties' resources on an unnecessary motion to dismiss.  At the conclusion of that process, Vassar now acknowledges that there is no basis to dismiss Plaintiffs' intentional discrimination claims under Title VII of the Civil Rights Act of 1964 ("Title VII") and the New York State Human Rights Law ("NYSHRL") (the first and fourth causes of action), or Plaintiffs' disparate impact discrimination claims under the same statutes (the second and fifth causes of action).  Mot. at 1.  Vassar seeks only to dismiss Plaintiffs' claim under the New York Equal Pay Law ("NY EPL") (the third cause of action).  *Id*.  As has been apparent since Vassar's first letter to the Court, that request should be denied.

Vassar continues to predicate its inadequate request to dismiss Plaintiffs' NY EPL claim on cases that *do not analyze the NY EPL*.  Twelve of Vassar's cases do not involve the law at all, but consider only the more "demanding" federal "equal work inquiry."  *E.E.O.C. v. Port Auth. of New York & New Jersey*, 768 F.3d 247, 255 (2d Cir. 2014).[1]  In another three of Vassar's cases, the court analyzed only the federal EPA, while stating (incorrectly) that "[c]laims for NY EPL

---

[1] *See infra* n.8 (identifying the eleven other cases that suffer from this same defect).

violations may be evaluated under the same standard as federal violations," and concluding (incorrectly) that courts may "consider both plaintiff's federal and state equal pay claims together." *Faughnan v. Nassau Health Care Corp.*, No. 219CV03171RJDRLM, 2021 WL 1566138, at *7 (E.D.N.Y. Mar. 18, 2021).[2] But as Plaintiffs have been reminding Vassar for years, including before and during this litigation: "the NY EPL is not the federal EPA, and NY EPL claims cannot be evaluated under the federal standard." ECF No. 27 ("First Ltr. Opp'n") at 2. Indeed, the only case Vassar cites that actually evaluates the NY EPL is a case first brought to Vassar's attention *by Plaintiffs*, in which the Second Circuit observed that a judge of the Southern District of New York had erred in evaluating federal EPA and NY EPL claims "under the same standard," and reversed the district court's grant of summary judgment under the NY EPL. *See id.* (citing *Eisenhauer v. Culinary Inst. of Am.*, 84 F.4th 507, 525-26 (2d Cir. 2023)).

Under the correct legal standard, there is no question that Plaintiffs sufficiently *plead* a NY EPL claim. Indeed, though Vassar twice suggests Plaintiffs' case is "groundless," Mot. at 2, 9, Vassar admits (as it must) that Plaintiffs adequately allege intentional discrimination and disparate impact discrimination against the College under both federal and state law, *id*. at 1. As to Plaintiffs' NY EPL claim, and at Vassar's request, Plaintiffs also took the unusual (and unnecessary) step of identifying multiple potential comparators for each Plaintiff.[3] *See* SAC ¶¶ 3, 50, 56, 61, 66, 71. As detailed in the SAC and again below, all of these men were paid more than the Plaintiff to whom they are compared during the class period, despite having comparable

---

[2] *See infra* n.9 (identifying the two other cases that suffer from this same defect).

[3] Beyond the lack of any procedural requirement that a class NY EPL claim name comparators in the complaint, Plaintiffs objected to this request out of concern for the privacy of their male colleagues and their desire not to inflict undue harm on the institution to which they have committed their careers. Plaintiffs' proffer of such information—in due course, in discovery—was rejected by Vassar in favor of a public airing of these facts.

(or lesser) seniority and performing substantially similar work.  Indeed, for their part, 15 of the men who are identified *by name* as comparators have publicly written to "voice strong support" for Plaintiffs "in their class-action lawsuit against the College due to long-standing, gender-based discrimination in salary."  *Id.* ¶ 35.

Notwithstanding the controlling Second Circuit law and compelling facts, Vassar refuses to acknowledge (to say nothing of embrace) the calls by its faculty—male and female alike—to close the pay gap, or the mandate by New York state to "conduct internal reviews of their pay policies and make adjustments as necessary in accordance with the *new law*."  N.Y. Dep't of Labor, *Pay Equity* (emphasis supplied).[4]  Instead, through this motion Vassar seeks to roll back New York pay equity law by advocating for a weakened standard and a premature (and unwarranted) merits determination that would severely hinder the ability of women, including Plaintiffs here, to redress the gender pay gap.  This is contrary to the NY EPL.  Moreover, terminating a viable claim before discovery even commences is simply not what Rule 12(b)(6) is designed to accomplish.  Vassar's improper attempt to dismiss this claim should be denied.

## II.   **BACKGROUND**

Plaintiffs—and all Vassar female full professors—are leaders in their fields who are highly regarded by their contemporaries (and comparators), as well as the Vassar student population.  SAC ¶¶ 6, 35, 48-49, 54-55, 59-60, 64-65, 69-70.  Despite their distinguished records and outsized contributions to the Vassar community, Vassar has compensated *all of them* less than men who perform substantially similar work for the College.[5]

---

[4] *Available at* https://dol.ny.gov/salary-historypay-equity (last visited Mar. 5, 2024).

[5] Because Vassar does not move to dismiss Plaintiffs' intentional discrimination or disparate impact discrimination claims, Plaintiffs do not recite here their amended allegations with respect to those claims.  However, Plaintiffs note that allegations about their specific experiences of Vassar's common discriminatory policies—including specific and startling information about

### A.     Vassar Has for Decades Knowingly and Systemically Underpaid Its Female Full Professors.

At Vassar's request (and over Plaintiffs' objection) Plaintiffs publicly identified certain men whom Vassar has paid more than them for substantially similar work, "including (in many cases) men who joined Vassar long after the Plaintiffs."  SAC ¶ 3; *see also id.* ¶ 50 (identifying 21 comparators for Professor Graham); *id.* ¶ 56 (identifying 3 comparators for Professor Höhn); *id.* ¶ 61 (identifying 8 comparators for Professor Mask); *id.* ¶ 66 (identifying 11 comparators for Professor Schwarz); *id.* ¶ 71 (identifying 14 comparators for Professor Zeifman).  But Vassar's "discriminatory underpayment of women extends far beyond the five Plaintiffs here or the dozens of men Vassar has paid more than them."  *Id.* ¶ 3.

Vassar's underpayment of its female full professors extends back decades.  SAC ¶ 3. Indeed, data Vassar shared with *The Chronicle of Higher Education* show not only a gender pay gap in average salary for full professors in *every year* back to 2003, but also reflect that this gap has *grown over time*.  *Id.* ¶ 24.  The disparity was 7.6 percent (its smallest) in the 2003-2004 academic year; grew to as high as 13.4 percent in the 2010-2011 academic year; and remained at 10.0 percent in the 2021-2022 academic year (the last year of publicly available data, before Vassar began preparing for litigation).  *Id.*  These disparities often began at hire, as "Vassar systematically offered men higher starting salaries than women," and grew exponentially over time, because "pay increases are a percentage of prior salary at Vassar."  *Id.* ¶ 23.

There is no doubt that Vassar has long known about—and long failed to correct—this pay disparity.  For example, on the initiative of then-Director of Women's Studies, Professor Lydia Murdoch, then-Dean of Faculty Jon Chenette agreed to host a retreat on May 6, 2011, at which

---

how Vassar delayed each of their promotions—is available in the SAC.  *See* SAC ¶¶ 51-53 (Professor Graham); *id.* ¶¶ 57-58 (Professor Höhn); *id.* ¶¶ 62-63 (Professor Mask); *id.* ¶¶ 67-68 (Professor Schwarz); *id.* ¶¶ 72-74 (Professor Zeifman).

the College hosted a presentation entitled, "Women in the Academy: A Snapshot of Indicators of the State of Women Faculty at Vassar." SAC ¶ 25.  The presentation included a table comparing average salary data, by gender, for Vassar's full faculty for the 2009-2010 academic year, *id.*, which confirms that Vassar has long been aware of—and even internally commented on—the pay gaps reported out to *The Chronicle of Higher Education*, *id.* ¶ 26.

Dating back to at least as early as 2003, female faculty have also elevated complaints of gender discrimination to the Vassar administration and attempted to work collaboratively with Vassar to close the gender pay gap.  SAC ¶¶ 4, 28-32.  At every turn, Vassar failed to embrace its self-proclaimed identity as a "pioneer for women's education," or its promise that the College was founded upon "a commitment to the advancement of equality between the sexes."  *Id.* ¶ 2.  Instead, the College ignored its female faculty's calls for pay equity, *id.* ¶¶ 4, 28-32, and turned in the other direction: "to *decrease* transparency around faculty salaries, despite widespread calls to *increase* transparency for the sake of identifying and redressing discrimination," *id.* ¶ 34.

Moreover, rather than close the pay gap, Vassar has falsely asserted that any pay gap is the result of the fact that "men are *simply higher performers* or *simply better at leveraging offers to negotiate* higher salaries."  SAC ¶ 33 (emphasis supplied).  Vassar is not only wrong about the relative capabilities of its female faculty but its assertion is also contradicted by Plaintiffs' experiences in attempting to negotiate their own compensation.[6]  For example, Professor Zeifman alleges that she "was told on at least two occasions—at hire and upon being awarded a Deanship—that her salary was completely non-negotiable, only to later learn that men had been permitted to negotiate their salaries in both circumstances."  *Id.*  Similarly, Professor Höhn tried

---

[6] To the extent Vassar paid men more than women for substantially similar work just because men requested it, this both violates the NY EPL and throws into question Vassar's enduring reputation as an institution that advances women.

to negotiate her starting salary with Vassar, in light of a higher offer she had received from the University of Southern California, but "was told by the then Dean of the Faculty that Vassar never negotiates starting salary." *Id*.

Vassar's failure to acknowledge—and fix—its pay equity problem is "out of step not only with the College's purported history of advancing gender equality, but also with the widespread recognition by current faculty that Vassar has a pay equity problem." SAC ¶ 35. Indeed, following this lawsuit, 29 male full professors—15 of whom are identified by name as comparators for the Plaintiffs—wrote jointly to "voice strong support" for Plaintiffs "in their class-action lawsuit against the College due to long-standing, gender-based discrimination in salary." *Id*. They "call[ed] upon President Bradley and the Vassar College Board of Trustees to settle the case amicably and promptly by agreeing to full compensation for the resulting financial inequites" and by committing "to address all forms of discrimination in the College's salary and compensation structure." *Id*. To date, Vassar has declined to heed that call.

### B.    In 2019, New York Amended Its Equal Pay Law to "Lessen the Burden" on Workers and Encourage "More" Cases Like this One.

When it took effect on October 8, 2019, the NY EPL "expand[ed] the definition of 'equal pay for equal work'" above the federal EPA standard, by "prohibit[ing] unequal pay on the basis of a protected class for *all substantially similar work*." N.Y. Dep't of Labor, *Pay Equity* (emphasis supplied). In passing this amendment, the New York legislature made clear that this was an *expansion* of rights, designed to open the courthouse doors to more claims. Indeed, the legislature noted that the "purpose" of the amendment was "to protect *more* employees against pay discrimination." Senate Bill S5248B (2019-2020 Leg. Sess.) (emphasis supplied).[7] The

---

[7] *Available at* https://www.nysenate.gov/node/7144595 (last visited Mar. 5, 2024).

legislature further explained that the "justification" for the amendment was that the federal "'equal pay for equal work' standard has proved to place an excessive burden of proof on aggrieved employees when filing a claim for pay discrimination," and that the 2019 amendment would "*lessen this burden* by requiring employers to also ensure equal pay for 'substantially similar work.'"  *Id*. (emphasis supplied).

At the time it was amended in 2019, then-Governor Cuomo therefore "called on businesses in New York to conduct internal reviews of their pay policies and make adjustments as necessary in accordance with the new law."  N.Y. Dep't of Labor, *Pay Equity*.  Despite continuing to claim a storied role in the movement for gender equality, Vassar not only ignored the Governor's call, but moved in the exact opposite direction.  SAC ¶ 3.  In response to renewed efforts by its female full faculty in 2020 and 2021 to work collaboratively (and internally) with Vassar to finally resolve the College's longstanding pay disparities, Vassar not only declined their invitation, but *decreased* the level of transparency about faculty salaries.  *Id*. ¶¶ 4, 30-34. As a result, significant and specific pay disparities—that have long been known to Vassar— persist to this day.  *Id*. ¶¶ 3, 50, 56, 61, 66, 71.

### III.   <u>LEGAL STANDARD</u>

Vassar spends more than two pages reciting uncontested pleading standards.  Mot. at 2-4. They boil down to this:  on a Rule 12(b)(6) motion, a complaint need only "state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is plausible "when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id*. at 663 (citing *Twombly*, 550 U.S. at 556).  A claim need *not* be more likely to succeed than fail; rather, "plausibility is a standard lower than probability, a given set of actions may well be subject to diverging interpretations, each of which is plausible."  *Anderson News,*

*L.L.C. v. Am. Media, Inc.*, 680 F.3d 162, 184 (2d Cir. 2012).  Indeed, dismissal is appropriate only if it is "beyond doubt that the plaintiff can prove no set of facts in support of his claim." *Phillip v. Univ. of Rochester*, 316 F.3d 291, 293 (2d Cir. 2003).

## IV.   ARGUMENT

Although Plaintiffs advised Vassar of its legal error, Vassar continues to rely almost exclusively on irrelevant cases decided under the federal EPA's more stringent "equal work" standard.  *Compare* First Ltr. at 1-2 (citing federal EPA cases) *with* First Ltr. Opp'n at 1-3 (noting this flaw).  When assessed under the proper standard governing a NY EPL claim (the only equal pay claim in this case), Plaintiffs unquestionably state a claim that is plausible on its face.  Indeed, as a result of the amendments requested by Vassar, Plaintiffs' SAC includes sufficient allegations to satisfy even Vassar's (incorrect) federal EPA authorities.  As such, there is no question that this claim—along with Plaintiffs' intentional discrimination and disparate impact discrimination claims—should proceed to complete discovery.

### A.     Vassar Continues to Rely on Irrelevant Federal Equal Pay Act Authorities.

Despite controlling Second Circuit law instructing parties not to conflate the NY EPL with the federal EPA, Vassar continues to do precisely that.  Twelve of Vassar's authorities consider *only* the federal EPA's more "demanding" federal "equal work inquiry" and opt-in process, while *not even mentioning* the NY EPL.  *E.E.O.C. v. Port Auth.*, 768 F.3d at 255.[8]

---

[8] *See also Becker v. Gannett Satellite Info. Network, Inc.*, 10 Fed. App'x. 135, 139 (4th Cir. 2001) (same); *Carey v. Foley & Lardner*, 577 Fed. App'x 573, 579-80 (6th Cir. 2014) (same); *Forsberg v. Pac. Nw. Bell Tel. Co.*, 840 F.2d 1409, 1416 (9th Cir. 1988) (same); *Kassman v. KPMG LLP*, No. 11 CIV. 3743 (LGS), 2020 WL 4003367, at *6 (S.D.N.Y. July 15, 2020) (same); *Solomon v. Fordham Univ.*, No. 18 Civ. 4615 (ER), 2020 WL 1272617, at *13 (S.D.N.Y. Mar. 17, 2020) (same); *Spencer v. Virginia State Univ.*, 919 F.3d 199, 204-05 (4th Cir. 2019), *as amended* (Mar. 26, 2019) (same); *Stern v. State Univ. of N.Y.*, No. 16-cv-5588 (NGG)(LB), 2018 WL 4863588, at *9 (E.D.N.Y. Sept. 30, 2018) (same); *Suzuki v. State Univ. of N.Y. Coll. at Old Westbury*, No. 08-cv-4569 (TCP), 2013 WL 2898135, at *4 (E.D.N.Y. June 13, 2013) (same); *Werst v. Sarar USA Inc.*, No. 17-CV-2181 (VSB), 2018 WL 1399343, at *8

Another three improperly treat the federal EPA's "equal work" standard and the NY EPL's "substantially similar" standard as the same, and evaluate both claims "together" under the higher federal standard, *Faughnan*, 2021 WL 1566138, at *7, either because the case predates New York's 2019 amendment to the NY EPL or because the case relies upon pre-2019 authorities that assert (now incorrectly) that the distinct claims can be evaluated under the same standard.[9]

The only case Vassar cites that actually considers the NY EPL is *Eisenhauer*, a case that *Plaintiffs* brought to Vassar's and the Court's attention because it underscores the need to evaluate the federal EPA and NY EPL under their separate standards.  *See* First Ltr. Opp'n at 2 (citing *Eisenhauer*).  The Second Circuit issued a clear directive in *Eisenhauer*:  district courts must stop evaluating federal EPA and NY EPL claims "under the same standard," because those standards have, in fact, changed as a result of New York's amendments.  84 F.4th at 525.  Vassar blithely ignores this directive, claiming that the Second Circuit was concerned with honoring *some* of New York's amendments to the NY EPL, but not *others*.  Mot. at 7, n.1.  Without explicitly saying as much, Vassar appears to be suggesting that it alone may still apply the federal "equal work" standard in service of its continued discrimination against its female employees, notwithstanding New York's unequivocal decision in 2019 to adopt the lesser "substantially similar work" standard.  *Id*.  To be clear:  any such suggestion is squarely foreclosed by *Eisenhauer*, wherein the Second Circuit noted that while district courts may have

---

(S.D.N.Y. Mar. 16, 2018) (same); *Wheatley v. Wicomico Cnty.*, 390 F.3d 328, 332 (4th Cir. 2004) (same).  Vassar also cites *Eng v. City of New York*, which cites the NY EPL only to note that it did not apply to the class of employers at issue, and therefore otherwise analyzed only the federal EPA.  No. 15 CIV. 1282 (DAB), 2017 WL 1287569, at *3 (S.D.N.Y. Mar. 29, 2017).

[9] *See also Durand v. Excelsior Care Grp., LLC*, No. 19-cv-2810 (KAM)(SJB), 2020 WL 7246437, at *4 (E.D.N.Y. Dec. 9, 2020) (same); *Khwaja v. Jobs to Move Am.*, No. 119CV07070JPCSDA, 2021 WL 4927140, at *4 (S.D.N.Y. Mar. 26, 2021) (same).

-9-

once "understandably overlooked" amendments to the NY EPL, courts will no longer be forgiven for failing to "consider the divergent requirements imposed by the EPA and [NY EPL]," and moving forward, must examine NY EPL claims "as altogether distinct" from federal EPA claims.  84 F.4th at 525-26.  And again, in amending the NY EPL in 2019, the legislature left no question that the federal "equal pay" and New York "substantially similar" inquiries are distinct, with the former being an "excessive burden of proof" and the latter a "lessen[ing of] this burden."  Senate Bill S5248B (2019-2020 Leg. Sess.).

If Vassar were right (and it is not), then its position would eviscerate New York's gender pay equity law.  Beyond being meritless, this is a curious defense for a Seven Sisters institution. SAC ¶ 3.  But the fact remains: "Vassar's federal EPA authorities [] carry no weight here, nor will any case in which the court does not properly embrace the enhanced protections New York adopted in 2019."  First Ltr. Opp'n at 2.

**B.     Plaintiffs Sufficiently Plead a Claim under the New York Equal Pay Law.**

Plaintiffs allege more than enough to state a claim under the NY EPL, which requires equal pay not for "equal work," but for "substantially similar work, when viewed as a composite of skill, effort, and responsibility, and performed under similar working conditions."  N.Y. Lab. Law § 194.

Plaintiffs allege that "faculty at comparable seniority within the College perform substantially similar work."  SAC ¶ 40.  Specifically, the Vassar faculty handbook confirms that male and female full professors have the same job requirements:  "The official college-wide course load is the equivalent of six units of instruction a year; however, this has been reduced to a standard load of five courses per year, with the sixth course off in compensation for the normal expectation of supervision of theses, independent work, community-engaged learning,

2954337.4

participation in programs, and participation in departmental and college committees." *Id*.

Moreover, all full male and female full professors "are expected to engage in teaching,

scholarship and service in the Vassar community," and all full male and female full professors

are evaluated on these same "three areas of performance." *Id*.  Moreover, while male and female

full professors have the same job duties and metrics for evaluation, *id*., Plaintiffs allege that

female full professors actually *exceed* their male counterparts in execution of these job duties,

commanding higher student enrollments, larger external grants, and more service on faculty

committees.  *Id*. ¶ 45.  These allegations, alone, would be sufficient to *state a claim* under the

amended NY EPL.  For example, just last fall the Second Circuit reversed *summary judgment* on

a NY EPL claim (i.e., on a full factual record) against the professor-plaintiff, where she alleged

that despite "carrying a similar course load," she was paid less than a male counterpart.

*Eisenhauer*, 84 F.4th at 513.  Notably, the fact that the two professors joined the Culinary

Institute of America with "different experience and education levels" was not dispositive,

because over the years, their work (but not salaries) had converged.  *Id*. at 514.

To be clear:  Plaintiffs were *not* required to identify any male comparators at the

*pleadings stage* to state a class NY EPL claim.  Nothing Vassar cites states otherwise.  *See* Mot.

at 10-11 (citing authorities about the evidence required to *prove* an *individual* prima facie case).

Indeed, other courts considering class claims under California's recently amended equal pay

law—which is *identical* to New York's amended law—have noted there is "no on-point

authority that the EPA requires that each particular Plaintiff or female employee needs to point to

a specific individual as a comparator."  *Rasmussen v. The Walt Disney Co.*, No. 19STCV10974,

2024 WL 454593, at *5 (Cal. Super. Ct. Jan. 30, 2024); *see also Ellis v. Google, LLC*, No. CGC-

17-561299, 2021 WL 4169813, at *5 (Cal. Super. Ct. May 27, 2021) ("The EPA does not require

that each and every plaintiff identify one specific individual as comparator."). Vassar's own authorities likewise explain that by suggesting otherwise, Vassar conflates the federal EPA (and its opt-in process) with the NY EPL (and its class action process). *See Suzuki*, 2013 WL 2898135, at *5 (noting that "Federal Rule of Civil Procedure 23 is an improper mechanism for bringing a multi plaintiff case under the EPA," because "EPA plaintiffs must expressly opt in to a case by written notice"). Moreover, to the extent Vassar suggests that every class member must identify a male comparator *in the complaint*, Vassar "threatens to turn a class suit into an 'opt in' procedure rather than an 'opt out' mechanism, an approach the Supreme Court has squarely rejected." 3 Newberg & Rubenstein on Class Actions § 9:11 (6th ed.).[10] And with respect to their NY EPL claim—and indeed all of their claims—Plaintiffs are merely the class members who bring this suit as class representatives pursuant to Rule 23, on behalf of all other female full professors of Vassar College. SAC ¶ 76.[11]

Notwithstanding Vassar's demand that Plaintiffs allege more than is required at the pleadings stage, Plaintiffs responded to Vassar's request by identifying multiple male comparators—by name—in an amended complaint, all of whom Vassar has paid more than each of the Plaintiffs for whom they are identified. SAC ¶¶ 3, 50, 56, 61, 66, 71. In response, Vassar misreads Plaintiffs' amendment as an "'all-professors-are-interchangeable-widgets' approach," Mot. at 1, and asserts that Plaintiffs attempt to compare "all professors, from associate to full" to

---

[10] *See also, e.g.*, *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 810 (1985) ("[A]n absent class-action plaintiff is not required to do anything. He may sit back and allow the litigation to run its course, content in knowing that there are safeguards provided for his protection.").

[11] There is no doubt that Plaintiffs merely stand in the shoes of these absent class members, a "majority" of whom jointly and publicly issued a statement following Plaintiffs' lawsuit, wherein they "urged the college to engage constructively with the lawsuit." Jacques Abou-Rizk, *Female Vassar Professors File Pay-Discrimination Lawsuit*, The Miscellany News (Sept. 6, 2023), *available at* https://miscellanynews.org/2023/09/06/news/five-female-vassar-professors-file-pay-discrimination-lawsuit/ (last visited Mar. 4, 2024).

one another, *id*. at 5.  This analysis wholly fails to engage those allegations.  As is obvious from the face of the pleading, each Plaintiff has a *different set of comparators*.  And every comparator is, like the Plaintiff they are compared to, a full professor with comparable (or lesser) seniority as compared to that Plaintiff, who also performs substantially similar work to that Plaintiff.  SAC ¶¶ 3, 50, 56, 61, 66, 71.  As just a few examples:

- One of the comparators identified for Professor Graham is Mark C. Amodio, who, like Professor Graham, teaches in the English Department.  SAC ¶ 50.  Professor Graham alleges that though both she and Professor Amodio joined Vassar in 1988, he was promoted *nine years before* her, *id*. ¶ 52, and that Vassar has consistently paid him more than her for substantially similar work, *id*. ¶ 50.

- One of the comparators identified for Professor Höhn is Robert K. Brigham, *id*. ¶ 56, who, like Professor Höhn, teaches in the History Department and joined Vassar within two years of Professor Höhn. Professor Höhn alleges that Vassar has consistently paid Professor Brigham more than her for substantially similar work.  *Id*.

- One of the comparators identified for Professor Mask is John F. Meehan, *id*. ¶ 61, who, like Professor Mask, teaches in the Arts Division and joined Vassar nine years after Professor Mask. Professor Mask alleges that Vassar has consistently paid Professor Meehan more than her for substantially similar work.  *Id*.

- One of the comparators identified for Professor Schwarz is John Howard Long, who, like Professor Schwarz, teaches in the Natural Sciences Division.  *Id*. ¶ 66.  Professor Schwarz alleges that though Professor Long joined Vassar six years *after* her, he was promoted two years *before* her, *id*. ¶ 67, and that Vassar has consistently paid him more than her for substantially similar work, *id*. ¶ 66.

- One of the comparators identified for Professor Zeifman is Kevin Holloway, who, like Professor Zeifman, teaches in the Psychological Science Department.  *Id*. ¶ 71.  Professor Zeifman alleges that though Professor Holloway joined Vassar *three years after* her, he was promoted *three years before* her, *id*. ¶ 73, and that Vassar has consistently paid him more than her for substantially similar work, *id*. ¶ 71.

-13-

There is no doubt that, taken together with their allegations about their common course loads, job duties, and evaluation metrics, SAC ¶¶ 40-45, Plaintiffs adequately *allege* that they are paid less than these men (and their other comparators) for substantially similar work.  Indeed, by suggesting otherwise Vassar is "[a]t best . . . requiring a much more exacting standard than required by statute and at worst seemingly seeking a merits determination."  *Rasmussen*, 2024 WL 454593, at *4; *see also id.* (granting, after extensive discovery, class certification of a claim under California's *identical* equal pay law, upon which New York's was modeled, for *all female employees of Disney*, including "mechanical engineers, sales representatives, preschool teachers and news producers, to name just a few," because "[w]hether [the] comparison drawn by Plaintiffs meets the substantially similar requirement will be for the ultimate fact finder to resolve"); *Ellis*, 2021 WL 4169813, at *4-5 (granting, after extensive discovery, class certification of a California EPA claim for all female employees of Google who worked in certain job codes—such as Software Engineer—because "common evidence" can be used to establish substantial similarity, and noting that whether the jobs at issue *actually are* substantially similar "is a question of fact for the factfinder").

Even if the Court were to consider Vassar's inapposite federal authorities—decided under the more burdensome "equal work" standard—Plaintiffs would still have alleged more than enough to *state a claim*.  Indeed, Vassar's own authorities make clear that a plaintiff "need not allege facts establishing each element of a prima facie case of discrimination to survive a motion to dismiss."  *Moazzaz v. MetLife, Inc.*, No. 19-CV-10531 (JPO), 2021 WL 827648, at *6 (S.D.N.Y. Mar. 4, 2021); *see also id.* (denying dismissal of federal EPA claim where plaintiff alleged "she and her comparators had common duties and reporting lines").[12]  For example,

---

[12] *See* First Ltr. at 1 (citing *Moazzaz*).

Vassar cites *Spencer*, in which the court granted summary judgment after discovery and on a full factual record, with which the factfinder was able to conclude that the plaintiff and her male comparators did not, in fact, perform *equal* work.  919 F.3d at 203.  But even the plaintiff in *Spencer* was entitled to discover her equal pay claim before it was decided on the merits, unlike the position Vassar takes here.  And as to Vassar's federal EPA cases decided on a motion to dismiss:  Plaintiffs here allege more than plaintiffs in those cases, while facing a "lesser" burden.  *See, e.g.*, *E.E.O.C. v. Port Auth.*, 768 F.3d at 249 (granting dismissal of federal EPA claim where "EEOC did not identify additional claimants, any comparators, or facts supporting its conclusion that the attorneys at issue were 'similarly situated'"); *Faughnan*, 2021 WL 1566138, at *8 (dismissing federal EPA claim where plaintiffs' allegations actually emphasized differences in the underlying work); *Suzuki*, 2013 WL 2898135, at *4 (dismissing federal EPA claim where plaintiff failed even to allege her job was similar to that of other male comparators, or to identify any professor who was purportedly paid more); *Solomon*, 2020 WL 1272617, at *13 (dismissing federal EPA claim of plaintiff proceeding pro se, where her allegations actually *conflicted* with that claim, and instead illustrated the non-*equal* nature of the work at issue).

Other authorities decided under the more stringent federal EPA likewise affirm the sufficiency of Plaintiffs' *allegations* here, which will be proven through discovery (including through expert analysis).  Indeed, multiple courts have found that statistical analysis of unequal pay is sufficient to prove that male and female professors perform equal work (even under the federal EPA's more stringent standard).  *See, e.g.*, *Siler-Khodr v. Univ. of Texas Health Sci. Ctr. San Antonio*, 261 F.3d 542, 547 (5th Cir. 2001) (affirming jury verdict for female professor on federal EPA claim, where she presented aggregated statistical studies proving gender had impacted faculty salaries at her university, and notwithstanding university's objection that the

statistical analyses were not separated out by sub-specialty); *Lavin-McEleney v. Marist Coll.*,

239 F.3d 476, 480-81 (2d Cir. 2001) (affirming jury verdict for female professor on federal EPA

claim, where she had not identified any specific male comparator by name, but instead a

statistically average male comparator using "five variables used by her expert to isolate

comparable positions [and] accurately capture[] equality of skill, effort, and responsibility").

### C.    Vassar Establishes Nothing by Citing Plaintiffs' Objections to Vassar's Improper Interrogatories.

In a final attempt to sidestep its obligations under the NY EPL, Vassar cites Plaintiffs'

responses to its special interrogatories as evidence that the SAC should be dismissed.  Mot. at 9.

This is nonsense.  It is well-settled that on a motion to dismiss, courts may consider *only* "the

facts as presented within the four corners of the complaint," and must "accept the allegations

contained in the complaint as true and draw all reasonable inferences in favor" of the plaintiff.

*Taylor v. Vermont Dep't of Educ.*, 313 F.3d 768, 776 (2d Cir. 2002).  Accordingly, even if

Plaintiffs' special interrogatory responses somehow conflicted with the allegations in the SAC—

and they do not—these responses cannot be considered on a motion to dismiss.  *Id.*

More critically, Vassar's argument is based on Plaintiffs' non-controversial objection to

certain contention interrogatories at this early stage of the case.  Indeed, in its misguided attempt

at a "gotcha" moment, Vassar succeeded only in highlighting its own failure to comply with a

Local Rule of the Southern District of New York.  Specifically, Local Rule 33.3 places strict

limits on interrogatories issued "at the commencement of discovery," and permits

"interrogatories seeking the claims and contentions of the opposing party" only "[a]t the

conclusion of other discovery."  Plaintiffs therefore (and correctly) objected to certain of

Vassar's interrogatories as "inappropriate and premature contention interrogator[ies]."  ECF No.

42-1 at 3, 4, 9, 15, 21, 27, 28.[13]  Plaintiffs' proper objection to this improper discovery sheds no light on the pending motion.

Finally, it is time to end Vassar's apparent attempt to prevent routine discovery of Plaintiffs' NY EPL claim.  *See* Mot. at 10 (quoting *Pension Ben. Guar. Corp. ex rel. St. Vincent Catholic Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt., Inc.*, 712 F.3d 705, 719 (2d Cir. 2013)).  Vassar's own authorities (under the more stringent federal EPA) confirm that whether female and male full professors at Vassar *actually* perform substantially similar work can and should be the subject of discovery, because this is a "fact-intensive analysis [] typically conducted after discovery and treated as 'a question for the jury.'"  *Moazzaz*, 2021 WL 827648, at *6; *see also Suzuki*, 2013 WL 2898135, at *4 (dismissing EPA claim only after plaintiff "had obtained a substantial amount of discovery").  Moreover, Vassar's critique of the cost of litigation strikes Plaintiffs as disingenuous.  Mot. at 2, 9-10.  It was Vassar—not Plaintiffs—that demanded litigation, and then the filing of three separate complaints.  SAC ¶¶ 28-32; First Ltr.; Second Ltr.

## V.   **CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that the Court deny Vassar's motion to dismiss.

---

[13] Vassar excerpted the interrogatory responses attached to its motion to dismiss, providing neither Plaintiffs' complete responses to the interrogatories—in which each Plaintiff identified numerous and different witnesses to her discrimination—nor Plaintiffs' recitations of the interrogatories to which she was responding and/or objecting.  ECF No. 42-1.

Dated: March 5, 2024      Respectfully submitted,

By: /s/ *Michelle A. Lamy*

Kelly M. Dermody (*pro hac vice*)
Anne B. Shaver (*pro hac vice*)
Michelle A. Lamy (*pro hac vice*)
LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Telephone: (415) 956-1000

Rachel J. Geman
Jessica A. Moldovan
LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP
250 Hudson Street, 8th Floor
New York, NY 10013-9592
Telephone: (212) 355-9500
Facsimile: (212) 355-9592

Jessica R. Stender (*pro hac vice*)
EQUAL RIGHTS ADVOCATES
611 Mission Street, 4th Floor
San Francisco, CA 94105
Telephone: (415) 575-2394

*Attorneys for Plaintiffs and the Proposed Class*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 5, 2024, a copy of the foregoing was served on all

attorneys of record via the ECF filing system.


<u>*/s/ Michelle A. Lamy*</u>
Michelle A. Lamy

2954337.4