UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------- X

WENDY GRAHAM, MARIA HÖHN, MIA
MASK, CINDY SCHWARZ, AND DEBRA
ZEIFMAN, on behalf of themselves and all
others similarly situated,

                    Plaintiffs,

      -against-

VASSAR COLLEGE,

                Defendant.

------------------------------------------------------- X

   :
   :
   :
   :
   :
   :
   :
   :
   :
   :
   :
   :
   :
   :

Civil Action No. 7:23-cv-07692-CS

**DEFENDANT'S ANSWER TO
PLAINTIFFS' SECOND AMENDED
CLASS ACTION COMPLAINT**

      Defendant, Vassar College ("Defendant" or "Vassar"), by and through its attorneys,

Seyfarth Shaw LLP, hereby submits its Answer to Plaintiffs' Second Amended Class Action

Complaint as follows:

## NATURE OF THE CLAIM

## COMPLAINT ¶1:

      Plaintiffs are female current or former faculty of Defendant Vassar College, who each
achieved the rank of full professor. Plaintiffs allege violations of Title VII of the Civil Rights
Act of 1964, 42 U.S.C. §§ 2000e *et seq*. ("Title VII"), the New York State Equal Pay Law ("NY
EPL"), Labor Law § 194, and the New York State Human Rights Law ("NY HRL"), Executive
Law §§ 296-301, on behalf of themselves and all other similarly situated women currently or
formerly employed by Vassar as full professors between May 14, 2015 through the resolution of
this action.

## ANSWER:

      Defendant admits that Plaintiffs are female current or former faculty of Defendant Vassar

College who each achieved the rank of full professor. The remainder of Paragraph 1 of the

Complaint calls for a legal conclusion, to which no response is required. To the extent that a

response is deemed required, Defendant admits that Plaintiffs purported to bring claims as stated

therein. Defendant further denies that it violated any of the laws referenced in Paragraph 1 of the

Complaint.

## COMPLAINT ¶2:

Vassar is a private liberal arts college in Poughkeepsie, New York, and was the second degree-granting institution of higher education for women in the United States. The College was founded in 1861 "to provide women an education equal to that once available only to men."[1] In 1926, Vassar joined "The Seven Sisters," a consortium of women's colleges that also includes Barnard, Bryn Mawr, Mount Holyoke, Smith, Radcliffe, and Wellesley.[2] The Seven Sisters formed "to combat the crisis which the women's colleges [were] facing, namely, the difficulties women's schools were having in raising endowment money sufficient for the desired caliber of education for these early 20th century young women."[3] Vassar still proudly identifies as a "pioneer for women's education," and asserts that the "unique traditions upon which the college was founded continue to be upheld today," including "a commitment to the advancement of equality between the sexes."[4]

## ANSWER:

Defendant admits the allegations set forth in Paragraph 2 of the Complaint, except avers

that "The Seven Sisters" consortium of women's colleges no longer exists in its original

configuration and the current associated institutions are now referred to as the Seven Colleges or

Seven Siblings.

## COMPLAINT ¶3:

Despite publicly claiming a storied role in the movement for gender equality, Vassar has long and privately been underpaying its female professors. Average salary data shared with *The Chronicle of Higher Education* reflect a gender pay disparity for full professors at Vassar in every year for the last two decades. Most troublingly, these data reflect a widening of the gender pay gap at Vassar over time: the disparity was 7.6 percent (its smallest) in the 2003-2004 academic year; grew to as high as 13.4 percent in the 2010-2011 academic year; and remained at 10.0 percent in the 2021-2022 academic year (the last year of available data). Indeed, Vassar underpays its female full professors *to this day*. Because Vassar requested (over Plaintiffs' objection) that Plaintiffs publicly name the men whom Vassar has paid more than them, Plaintiffs amended their complaint to do so. As set forth below, Vassar has unlawfully paid numerous male professors more than each of the Plaintiffs for substantially similar work, including (in many cases) men who joined Vassar long after the Plaintiffs. But make no mistake:

---

[1] Vassar College, *About*, https://www.vassar.edu/about.
[2] Vassar College, *The Founding of The Seven Sisters*, https://vcencyclopedia.vassar.edu/notable-events/the-seven-sisters/.
[3] *Id.*
[4] Vassar College, *A History of Vassar College*, https://www.vassar.edu/about/history.

311700805v.4

Vassar's discriminatory underpayment of women extends far beyond the five Plaintiffs here or the dozens of men Vassar has paid more than them.

**ANSWER:**

Defendant denies the allegations set forth in Paragraph 3 of the Complaint.

**COMPLAINT ¶4:**

Vassar has also long and privately been sweeping complaints of discrimination under the rug. Since at least as early as 2003, and consistently since then, female professors have internally elevated concerns to the Vassar administration about unequal pay within the College's ranks. Instead of remedying its gender pay gap, Vassar responded by *decreasing* the level of transparency about faculty salaries, in an apparent attempt to mask its decades-long pattern of underpaying of women. In so doing, Vassar stands in stark contrast to the many employers—including within academia—to have heeded the nationwide call to increase pay transparency. Vassar's turn toward opacity would be problematic for any institution, let alone one that so publicly claims to strive for equity and inclusion. The College's attempt to cover-up—rather than correct—its underpayment of women also amounts to intentional discrimination.

**ANSWER:**

Defendant denies the allegations set forth in Paragraph 4 of the Complaint, except admits

that some female professors have raised concerns about their pay.

**COMPLAINT ¶5:**

For years, Vassar has also implemented personnel policies that the College knows disadvantage women. Vassar systematically delays the promotion of female professors, causing women to advance more slowly through faculty ranks at the College. The College's performance evaluation system, too, is marred by discrimination. Vassar's College-wide compensation, promotion, and evaluation policies, while facially neutral, have therefore had a disparate impact on women. Vassar's maintenance of these policies—despite the College's knowledge that they disparately impact women—amounts to intentional discrimination. These policies must be reformed, to ensure fairness and gender equity moving forward.

**ANSWER:**

Defendant denies the allegations set forth in Paragraph 5 of the Complaint.

**COMPLAINT ¶6:**

Plaintiffs—and all Vassar female full professors—are leaders in their fields who are highly regarded by their contemporaries and the student population. For far too long, Vassar has failed to fairly and equitably value their contributions to the College. Through this action, Plaintiffs seek to achieve what they were prevented from accomplishing through private internal

channels: gender equity for themselves and other female full faculty, and the adoption of fair processes to ensure that future generations of faculty are paid, promoted, and evaluated fairly.

**ANSWER:**

Vassar lacks knowledge or information sufficient to form a belief as to the meaning of the phrase "leaders in their field" in Paragraph 6 of the Complaint; and lacks knowledge or information sufficient to form a belief as to how Vassar female full professors are regarded by their contemporaries and the student population at any given time, and therefore denies same. Defendant denies the remainder of the allegations set forth in Paragraph 6 of the Complaint.

**PARTIES**

**I.    Plaintiffs**

**COMPLAINT ¶7:**

Plaintiff Wendy Graham is a woman who is employed by Vassar College as a full Professor in the English Department.

**ANSWER:**

Defendant admits the allegations set forth in Paragraph 7 of the Complaint.

**COMPLAINT ¶8:**

Plaintiff Maria Höhn is a woman who was employed by Vassar College as a full Professor in the History Department.

**ANSWER:**

Defendant admits the allegations set forth in Paragraph 8 of the Complaint.

**COMPLAINT ¶9:**

Plaintiff Mia Mask is a woman who is employed by Vassar College as a full Professor in the Film Department.

**ANSWER:**

Defendant admits the allegations set forth in Paragraph 9 of the Complaint.

311700805v.4

**COMPLAINT ¶10:**

Plaintiff Cindy Schwarz (Rachmilowitz) is a woman who is employed by Vassar College as a full Professor in the Physics and Astronomy Department.

**ANSWER:**

Defendant admits the allegations set forth in Paragraph 10 of the Complaint.

**COMPLAINT ¶11:**

Plaintiff Debra Zeifman is a woman who is employed by Vassar College as a full Professor in the Psychological Science Department.

**ANSWER:**

Defendant admits the allegations set forth in Paragraph 11 of the Complaint.

**COMPLAINT ¶12:**

At all relevant times, Plaintiffs have been covered employees within the meaning of all applicable statutes.

**ANSWER:**

Paragraph 12 of the Complaint calls for a legal conclusion, to which no response is required. To the extent that a response is deemed required, Defendant admits that Plaintiffs are covered employees within the meaning of the statutes under which the claims in this lawsuit have been brought, and denies any remaining allegations set forth in Paragraph 12 of the Complaint.

**II.    Defendant**

**COMPLAINT ¶13:**

Defendant Vassar College is a private institution of higher education located in Poughkeepsie, New York and chartered in the State of New York.[5]

---

[5] Vassar College, *The Governance of Vassar College*, https://offices.vassar.edu/dean-of-the-faculty/wp-content/uploads/sites/36/2021/08/governance-2021-22.pdf.

311700805v.4

**ANSWER:**

Defendant admits the allegations set forth in Paragraph 13 of the Complaint.

**COMPLAINT ¶14:**

Upon information and belief, Vassar maintains control, oversight, and direction over the operation of its facilities, including its employment practices.

**ANSWER:**

Defendant denies the allegations set forth in Paragraph 14 of the Complaint. Defendant

further avers that the functions and powers of the College's trustees, administrative officers, and

faculty are specified in The Governance of Vassar College, which document speaks for itself.

**COMPLAINT ¶15:**

At all relevant times, Vassar was Plaintiffs' employer within the meaning of all applicable statutes.

**ANSWER:**

Paragraph 15 of the Complaint calls for a legal conclusion, to which no response is

required. To the extent that a response is deemed required, Defendant admits that Plaintiffs are

covered employees within the meaning of the statutes under which the claims in this lawsuit

have been brought, and denies any remaining allegations set forth in Paragraph 15 of the

Complaint.

## JURISDICTION AND VENUE

**COMPLAINT ¶16:**

This Court has subject matter jurisdiction over this action under 28 U.S.C. §§ 1331, 1343 and 42 U.S.C. § 2000e–5(f)(3) because this case includes claims arising under federal law that are brought to recover damages for deprivation of equal rights. This Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367(a).

**ANSWER:**

Paragraph 16 of the Complaint calls for a legal conclusion, to which no response is

required. To the extent that a response is deemed required, Defendant admits the allegations set

6

forth in Paragraph 16 of the Complaint, except denies that Plaintiffs are entitled to recover any

damages for deprivation of equal rights.

## COMPLAINT ¶17:

This Court has personal jurisdiction over Vassar because Vassar is incorporated and resides in this District, regularly transacts business in this District, and committed acts within this District that caused injury to persons and/or property within the District.

## ANSWER:

Paragraph 17 of the Complaint calls for a legal conclusion, to which no response is

required.  To the extent that a response is deemed required, Defendant admits the allegations set

forth in Paragraph 17 of the Complaint, except denies that Vassar committed acts within this

District that caused injury to persons and/or property within the District.

## COMPLAINT ¶18:

Venue is proper in this District under 28 U.S.C. § 1391 because Vassar is deemed to reside in any judicial district in which it is subject to personal jurisdiction.

## ANSWER:

Paragraph 18 of the Complaint calls for a legal conclusion, to which no response is

required.  To the extent that a response is deemed required, Defendant admits the allegations set

forth in Paragraph 18 of the Complaint.

## ALLEGATIONS

## COMPLAINT ¶19:

Though female full professors employed by Vassar perform comparable work to that of male full professors and provide other comparable services to the College, Vassar has consistently—and for decades—failed to treat them equitably with respect to compensation, promotions, and evaluations.

## ANSWER:

Defendant denies the allegations set forth in Paragraph 19 of the Complaint.

311700805v.4

**COMPLAINT ¶20:**

Vassar systematically underpays, underpromotes, and unfairly evaluates its female full professors, in violation of Title VII, New York law, and the College's stated commitments to equity. Vassar's college-wide policies and practices regarding compensating, promoting, and evaluating its faculty, while facially neutral, have had and continue to have a disparate impact on women. By continuing to use these policies—despite knowledge of their disparate impact—Vassar also intentionally discriminates against its female faculty.

**ANSWER:**

Defendant denies the allegations set forth in Paragraph 20 of the Complaint.

**COMPLAINT ¶21:**

Plaintiffs each filed a charge of gender discrimination with the Equal Employment Opportunity Commission ("EEOC"), individually and on behalf of all similarly situated female full professors currently or formerly employed by Vassar College between May 14, 2015 through the present. By notices dated September 29, 2023, the EEOC issued each Plaintiff a Notice of Right to Sue.

**ANSWER:**

Defendant admits that Plaintiffs each filed charges with the Equal Employment

Opportunity Commission and received Notices of Right to Sue on September 29, 2023. The

remainder of Paragraph 21 of the Complaint calls for a legal conclusion, to which no response is

required. To the extent that a response is deemed required, Defendant denies the remainder of

the allegations set forth in Paragraph 21 of the Complaint.

**I.    Vassar Knowingly and Systematically Underpays Female Professors**

**COMPLAINT ¶22:**

Upon information and belief, and as reflected in both public and internal reporting, Vassar's female full professors are paid less, on average, than their similarly situated male peers for performing substantially similar work.

**ANSWER:**

Defendant denies the allegations set forth in Paragraph 22 of the Complaint.

**COMPLAINT ¶23:**

Pay disparities within this Class often began at hire, as Vassar systematically offered men higher starting salaries than women.  Because pay increases are a percentage of prior salary at Vassar, that initial disparity grows exponentially over Class members' (often multi-decade) careers.  As a result, a relatively lower (than men's) starting salary in the early years—which has been the reality for women at Vassar dating back decades—renders women's salaries disadvantaged to an increasing extent over the course of their careers.

**ANSWER:**

Defendant denies the allegations set forth in Paragraph 23 of the Complaint.

**COMPLAINT ¶24:**

Indeed, data Vassar shared with *The Chronicle of Higher Education* show not only a gender pay gap in average salary for full professors in *every year* dating back to 2003, but also reflect that this gap has *grown over time*:

| Year | Male | Female | Pay Gap ($) | Pay Gap (%) |
|------|------|--------|-------------|-------------|
| 2003-2004 | $108,125 | $100,462 | $7,663 | 7.6% |
| 2004-2005 | $112,648 | $103,327 | $9,321 | 9.0% |
| 2005-2006 | $116,813 | $107,455 | $9,358 | 8.7% |
| 2006-2007 | $120,352 | $108,207 | $12,145 | 11.2% |
| 2007-2008 | $125,721 | $112,974 | $12,747 | 11.3% |
| 2008-2009 | $132,293 | $118,047 | $14,246 | 12.1% |
| 2009-2010 | $126,414 | $113,831 | $12,583 | 11.1% |
| 2010-2011 | $127,607 | $112,555 | $15,052 | 13.4% |
| 2011-2012 | $130,558 | $118,211 | $12,347 | 10.4% |
| 2012-2013 | $133,938 | $122,526 | $11,412 | 9.3% |
| 2013-2014 | $137,340 | $122,967 | $14,373 | 11.7% |
| 2014-2015 | $137,115 | $124,479 | $12,636 | 10.2% |
| 2015-2016 | $140,040 | $125,820 | $14,220 | 11.3% |
| 2016-2017 | $141,399 | $128,808 | $12,591 | 9.8% |
| 2017-2018 | $142,089 | $131,126 | $10,963 | 8.4% |
| 2018-2019 | $146,109 | $132,676 | $13,433 | 10.1% |
| 2019-2020 | $155,223 | $135,435 | $19,788 | 14.6% |
| 2020-2021 | $148,442 | $133,247 | $15,195 | 11.4% |
| 2021-2022 | $153,238 | $139,322 | $13,916 | 10.0% |

**ANSWER:**

Defendant denies the allegations set forth in Paragraph 24 of the Complaint.

**COMPLAINT ¶25:**

There is no doubt that Vassar has long known about—and long failed to correct—this pay disparity.  For example, on the initiative of then Director of Women's Studies, Professor Lydia Murdoch, then-Dean of Faculty Jon Chenette agreed to host a retreat on May 6, 2011, at which the College put on a presentation entitled, "Women in the Academy: A Snapshot of Indicators of the State of Women Faculty at Vassar."  The presentation included the following table comparing average salary data, by gender, for Vassar's full faculty for the 2009-2010 academic year:

## Full Time Faculty  -  Average Salary Data by Gender
### Source:  AAUP/HEDS Faculty Compensation Survey, Fall 2009-10
### (Data in thousands of dollars)

| | *Men* | | | | *Women* | |
|---|---|---|---|---|---|---|
| *Professor* | *Associate* | *Assistant* | | *Professor* | *Associate* | *Assistant* |
| 126.4 | 91.2 | 68.5 | | 113.8 | 87.1 | 69.0 |

**ANSWER:**

Defendant denies the allegations set forth in Paragraph 25 of the Complaint, except admits that Vassar held a faculty retreat on or about May 6, 2011.  Vassar lacks knowledge or information sufficient to form a belief as to all material presented at the retreat, as referenced in Paragraph 25 of the Complaint.

**COMPLAINT ¶26:**

As this chart demonstrates, the Vassar administration has long been aware of— and even internally commented on—the same pay gaps for female full professors that were reported out to *The Chronicle of Higher Education*.

**ANSWER:**

Defendant denies the allegations set forth in Paragraph 26 of the Complaint.

**COMPLAINT ¶27:**

Vassar has also long known that women professors are less satisfied than men with their compensation, experience this pay disparity as discrimination, and doubt Vassar's commitment to gender equity.  In a 2011 self-reported survey of the Vassar faculty that was shared at the same May 2011 retreat:

311700805v.4

a.    of respondents who answered that they were "Not Satisfied" with salary, 62.5% were women while only 37.5% were men;

b.    of respondents who answered "disagree strongly" to the prompt, "women faculty are treated fairly here," 80% were women, while only 20% were men;

c.    42.4% of women reported experiencing discrimination at Vassar, with 11.9% of women reporting that this discrimination was "extensive"; and

d.    17.2% of women responded that "institutional priority to promote gender equity among faculty" was a "low priority" for Vassar.

**ANSWER:**

Defendant denies the allegations of Paragraph 27 of the Complaint, except admits that Vassar held a faculty retreat on or about May 6, 2011. Vassar lacks knowledge or information sufficient to form a belief as to all material presented at the retreat, as referenced in Paragraph 27 of the Complaint.

**COMPLAINT ¶28:**

For many years, female faculty have attempted to work collaboratively with Vassar to address these concerns and close the gender pay gap. For example, the steering committee of this 2011 retreat recommended, among other things: (i) publication of faculty salary ranges and merit increases by rank (as had been previous practice); (ii) establishment of clearer guidelines for evaluation of performance; (iii) creation of an independent, faculty advocacy board to facilitate faculty negotiations regarding salary and service expectations; and (iv) increased transparency in all matters concerning the institution. At this juncture, and at every turn since, Vassar has refused to correct its legacy of underpaying female faculty.

**ANSWER:**

Defendant admits that Vassar and certain female faculty members have worked to address certain faculty members' concerns regarding pay. Defendant further admits that Vassar held a faculty retreat on or about May 6, 2011. Defendant lacks knowledge or information sufficient to form a belief as to all material prepared by a "steering committee" of the retreat, as referenced in Paragraph 28 of the Complaint. Defendant denies the remainder of the allegations set forth at Paragraph 28 of the Complaint.

**COMPLAINT ¶29:**

In or around 2013, a group of women professors again approached the administration—seeking an audience with then-President Catharine "Cappy" Bond Hill—in the hopes of redressing the inequity apparent in the *Chronicle* data.  Though the administration acknowledged the existence of the disparity in the publicly reported data, it refused to cooperate with their attempt to close the pay gap.  In an email dated September 30, 2013, then-Acting Dean of Faculty Stephen Rock wrote: "I am sorry to say that the raw data will not be released."  Though Vassar had already disclosed the requested data to a male member of the faculty, Dean Rock explained it was because this man was a "world-class econometrician."  Among the women faculty with whom Dean Rock refused to share the raw data were: a world-class economist, a world-class physicist, a world-class psychologist, a world-class biologist, and two world-class historians.

**ANSWER:**

Defendant admits that a group of female professors met with Vassar administration in or around 2013, and admits that Vassar did not release raw data on the compensation of all faculty members to that group of professors.  Defendant denies the remainder of the allegations set forth at Paragraph 29 of the Complaint.

**COMPLAINT ¶30:**

By 2020, little to nothing had changed.  In the fall of that academic year, another group of female full professors gathered publicly available data, including the Chronicle data, and engaged then- and current-President Elizabeth Bradley and then- and current-Dean of Faculty William Hoynes in the hopes of finally resolving the pay disparity.

**ANSWER:**

Defendant admits that a group of female full professors met with President Elizabeth Bradley and Dean William Hoynes in or around the fall of 2020 to discuss pay.  Defendant denies the remainder of the allegations set forth at Paragraph 30 of the Complaint.

**COMPLAINT ¶31:**

Their efforts at first seemed to gain traction: Vassar agreed to conduct a pay equity study analyzing compensation for the 2020-2021 academic year.  President Bradley, Biniam Tesfamariam of Vassar's Office of Institutional Research, and this group of women then spent three months—October through December of 2020—analyzing data provided by the College, which confirmed that pay disparities at the full professor level (as publicly reported) had persisted over the years.  The pay gap was most pronounced among the longest-serving women:

311700805v.4

the gender difference in median annual salary among full professors serving twenty or more years post-tenure was roughly $30,000, amounting to a 20 percent pay gap every year for many in this distinguished group of female professors.

**ANSWER:**

Defendant admits that Vassar conducted a review of compensation for the 2020-2021 academic year. Defendant further admits that President Bradley and Biniam Tesfamariam were involved in conducting that review, and admits that a group of female faculty members were involved in discussions related to the review. Defendant denies the remainder of the allegations set forth at Paragraph 31 of the Complaint.

**COMPLAINT ¶32:**

Unfortunately, Vassar's cooperation largely ended with its confirmation that the gender pay gap had not been addressed. On February 1, 2021, Dean Hoynes wrote to a number of the women engaged in the internal efforts and informed them that, based on Vassar's recent analysis of faculty salaries, he would be working with the administration to conduct equity reviews for *some* (but not all) professors. Despite the clear pattern of widespread discrimination revealed by the pay equity study, review was not automatic: any professor who wanted a review had to request one, and some who requested a review did not receive one. Of those professors whose salaries were reviewed, many were not given a pay adjustment that accounted for either present or historical pay disparities. In March and April 2021, a subset of women full professors were notified that they would be given a one-time salary bump. Some of the pay adjustments were as low as $1,000, which did not come close to addressing the demonstrated pay shortfalls. The majority of women received no pay adjustment at all. Moreover, Vassar relied heavily on data and processes—namely the promotion and merit systems—that are well-understood to also be tainted with discrimination, to reach these half-measures of pay adjustments.

**ANSWER:**

Defendant admits that on or about February 1, 2021, Dean Hoynes emailed the female full-time Full Professors who had been at Vassar twenty or more years beyond tenure to inform them that he would be working with the Dean of Faculty office and Tesfamariam to conduct equity reviews for those faculty members. Defendant further admits that of those professors whose salaries were reviewed, some received no pay adjustment because based on Vassar's

review and those professors' specific circumstances no pay increase was warranted. Defendant

denies the remainder of the allegations set forth at Paragraph 32 of the Complaint.

## COMPLAINT ¶33:

Throughout this effort, Vassar also falsely asserted that any pay gap is the result of the fact that men are simply higher performers or simply better at leveraging offers to negotiate higher salaries. In other words, Vassar's response to a group of their distinguished senior faculty raising concerns of gender pay inequity boiled down to: men make more money because men are better or, if not, Vassar has decided it is acceptable to pay men more for the same job. In reality, when women did attempt to negotiate their salaries, they were either actively discouraged from doing so or lied to about the possibility of negotiation. For example, Professor Zeifman was told on at least two occasions—at hire and upon being awarded a Deanship—that her salary was completely non-negotiable, only to later learn that men had been permitted to negotiate their salaries in both circumstances. When Professor Höhn—who had an offer from the University of Southern California with a higher salary than Vassar's, and had already taught a year at the University of Pennsylvania—tried to negotiate her starting salary at Vassar, she was told by the then Dean of the Faculty that Vassar never negotiates starting salary.

## ANSWER:

Defendant denies the allegations set forth in Paragraph 33 of the Complaint.

## COMPLAINT ¶34:

In recent years, Vassar has fallen even farther behind its equity mission—moving to *decrease* transparency around faculty salaries, despite widespread calls to *increase* transparency for the sake of identifying and redressing discrimination. Vassar no longer shares reports with faculty that include mean and median salaries at each professorial rank, when reporting yearly salary raises.

## ANSWER:

Defendant admits that it does not share reports with faculty that include mean and median

salaries at each professorial rank. Defendant denies the remainder of the allegations set forth in

Paragraph 34 of the Complaint.

## COMPLAINT ¶35:

Vassar's refusal to correct known pay disparities is out of step not only with the College's purported history of advancing gender equality, but also with the widespread recognition by current faculty that Vassar has a pay equity problem. Indeed, following the filing of this lawsuit, a group of 29 male full professors at Vassar wrote to "voice strong support" for Plaintiffs "in their class-action lawsuit against the College due to long-standing, gender-based

discrimination in salary."[6]  These men "call[ed] upon President Bradley and the Vassar College Board of Trustees to settle the case amicably and promptly by agreeing to full compensation for the resulting financial inequities" and by committing "to address all forms of discrimination in the College's salary and compensation structure."[7]  Notably, 15 of the signatories to this letter are among the very individuals whom Vassar requested (over Plaintiffs' objection) that Plaintiffs publicly name in an amended complaint because Vassar has paid them more than Plaintiffs for substantially similar work.

**ANSWER:**

Defendant admits that 29 male professors at Vassar wrote a letter after the filing of the

instant action, which was published in the college newspaper, and that the letter speaks for itself.

Defendant admits that Plaintiffs identified 15 of those signatories in their Second Amended

Complaint in response to Defendant's motion to dismiss.  Defendant denies the remainder of the

allegations set forth in Paragraph 35 of the Complaint.

## II.    Vassar Systematically Delays Promotion of Female Faculty

**COMPLAINT ¶36:**

Vassar has attempted to justify its underpayment of women by claiming that the reason male faculty have higher salaries than female faculty is that men are promoted to full professor earlier in their careers.  Vassar ignores two critical facts: the College is responsible for this discriminatory promotion delay; and when it comes to equal pay under New York law, job title is not dispositive.  Instead, the key question is whether comparable individuals are performing substantially similar work, regardless of title.

**ANSWER:**

Defendant denies the allegations set forth in Paragraph 36 of the Complaint.

**COMPLAINT ¶37:**

At Vassar, the promotion process is identical for all individuals, regardless of Department.  Faculty hired at the level of assistant professor follow the same path through the College: (1) an extension of contract review in their second year; (2) a review for reappointment to a second term as assistant professor in their fourth year; (3) a review for promotion to associate professor (i.e., a tenure review) in their seventh year; and (4) eligibility for promotion

---

[6] Male Professors of Vassar College, *The Miscellany News* (Sept. 20, 2023), https://miscellanynews.org/2023/09/20/opinions/letter-to-the-editor-male-professors/.
[7] *Id.*

to full professor after six years as an associate professor.  The criteria for each of these promotions is exactly the same for all individuals, regardless of Department.[8]

**ANSWER:**

Defendant denies the allegations set forth in Paragraph 37 of the Complaint.  Defendant further avers that the policies and procedures for promotion are specified in Vassar's Faculty Handbook, which is regularly updated and approved by the faculty, and which document speaks for itself.

**COMPLAINT ¶38:**

The groups involved at each promotion are likewise the same across the College.  The extension of contract review involves only the Department, the Dean of the Faculty, and the President, and on occasion, the Faculty Appointment & Salary Committee (FASC).  The reappointment review involves the Department, the Dean of the Faculty, the President, and FASC.  The tenure review, which includes promotion from assistant professor to the rank of associate professor, includes the tenured members of the Department, the Dean of the Faculty, the President, FASC, as well as outside experts in the candidate's field of expertise who assess the candidate's scholarly contributions and standing in their field.  After promotion to the rank of associate professor with indeterminate tenure, a faculty member is typically reviewed every three years by the Department, FASC, the Dean of the Faculty, and the President.  Generally, after six years at the rank of associate professor, a faculty member is eligible to be reviewed for a promotion to full professor.  The promotion to full professor review is conducted by full professors in the Department, FASC, the Dean of the Faculty, the President, and outside experts in the candidate's field of expertise who assess the candidate's scholarly contributions and standing in their field.

**ANSWER:**

Defendant denies the allegations set forth in Paragraph 38 of the Complaint.  Defendant further avers that the policies and procedures for promotion are specified in Vassar's Faculty Handbook, which is regularly updated and approved by the faculty, and which document speaks for itself.

---

[8] *See* Vassar College, *Faculty Handbook*, 2023-24, § 3.3.1 (setting forth the criteria for the contract extension), § 3.3.2 (setting forth the criteria for reappointment), § 3.3.3 (setting forth the criteria for promotion to associate professor), § 3.3.4 (setting forth the criteria for promotion to full professor), available at https://offices.vassar.edu/dean-of-the-faculty/wp-content/uploads/ sites/36/Faculty-Handbook.pdf.

311700805v.4

**COMPLAINT ¶39:**

Though this process is the same for all faculty, and neutral on its face, it has a disparate impact on women. Advancement to full professor requires department support and peer reviews that fundamentally favor men over comparable women and ensure that women take longer to advance. Female professors who nonetheless persevere and attempt promotion to full professor are often initially denied promotion (sometimes more than once) or met with strenuous and undue resistance by their Departmental colleagues. The delayed timeframe in which women advance through the academic ranks at Vassar is therefore nothing other than further evidence of discrimination at the College. In fact, Vassar has long known that its promotion process favors men. For example, in the survey of Vassar faculty reported out at the May 2011 Dean's retreat, of the respondents who answered "disagree strongly" to the prompt "criteria for advancement and promotion are clear," 73.3% were women while only 26.7% were men.

**ANSWER:**

Defendant denies the allegations set forth in Paragraph 39 of the Complaint, except

admits that Vassar held a faculty retreat on or about May 6, 2011, and Vassar lacks knowledge or

information sufficient to form a belief as to all material presented at the retreat, as referenced in

Paragraph 39 of the Complaint.

**COMPLAINT ¶40:**

Importantly, the promotion discrimination women face at Vassar cannot be explained by differences in their job duties or performance. At Vassar, faculty at comparable seniority within the College perform substantially similar work. Indeed, *all* "[t]enured faculty members are expected to engage in teaching, scholarship and service in the Vassar community," and reviewers "shall consider all three areas of performance" while conducting post-tenure review.[9] Moreover, *all* tenured professors have the same job requirements, regardless of whether they perform this work at the full or associate professor level: "The official college-wide course load is the equivalent of six units of instruction a year; however, this has been reduced to a standard load of five courses per year, with the sixth course off in compensation for the normal expectation of supervision of theses, independent work, community-engaged learning, participation in programs, and participation in departmental and college committees."[10] Associate and full professors across the College therefore perform the same job duties. Further, and significantly, at Vassar there is no salary increase associated with the promotion to full professor.

---

[9] *Id*. § 3.3.5.
[10] *Id*. § 2.1.5.

**ANSWER:**

Defendant admits that the quoted portions of the 2023-2024 Faculty Handbook accurately reflect its contents, and that the document speaks for itself.  Defendant denies the remainder of the allegations set forth in Paragraph 40 of the Complaint.

**COMPLAINT ¶41:**

Accordingly, Vassar cannot pay women less than men simply because it also delays women in receiving the full professor title they have earned.

**ANSWER:**

Vassar denies the allegations set forth in Paragraph 41 of the Complaint.

**III.    Vassar Unfairly Evaluates Female Faculty**

**COMPLAINT ¶42:**

Vassar's merit system has systematically disadvantaged women and continues to systematically disadvantage women because it is tainted with bias.  Vassar has been aware, based on its own internal data analysis, that women are given lower merit ratings at all professorial ranks.  Despite this knowledge, the College refuses to revise the merit system or uncouple merit ratings from salary increases.

**ANSWER:**

Vassar denies the allegations set forth in Paragraph 42 of the Complaint.

**COMPLAINT ¶43:**

At each of the reviews detailed above, the faculty candidate is evaluated on the basis of various materials, some of which are submitted by the candidate and some which are supplied by the College.  These documents typically include a personal statement, curriculum vitae, annual activity reports, student course evaluation questionnaires ("CEQs"), and the most recent past review letter.  FASC also receives a "salary card" for the faculty member, which lists years of service, titles, years in current rank, and previous merit ratings.  Tenure reviews and promotion to full professor include these materials as well as a teaching portfolio, all scholarly or artistic activity undertaken during the years covering the review, a separate research statement, and recommendations from four outside evaluators.

**ANSWER:**

Defendant admits that a faculty member being reviewed for extension, reappointment or promotion is evaluated on the basis of various materials.  Defendant admits that the materials

typically included as part of a candidate's dossier, as well as which materials are to be provided

by the candidate, are specified in the Faculty Handbook, which is regularly updated and

approved by the faculty, and which document speaks for itself.  Defendant denies the remainder

of the allegations set forth in Paragraph 43 of the Complaint.

## COMPLAINT ¶44:

Reviews in which FASC, the Dean, and the President participate (i.e., extension for reappointment, tenure review, promotion to full, and all post-tenure reviews) culminate with the candidate being assigned a merit rating.  Annual faculty salary increases typically include a percentage base raise, which is a percentage of each individual faculty member's salary, and a merit raise.  The merit raise is a dollar amount linked to the candidate's merit rating on a four-point scale: distinction (worth 3 points), high merit (worth 2 points), merit (worth 1 point), or base salary/no merit (worth no points).

## ANSWER:

Defendant admits the allegations set forth in Paragraph 44 of the Complaint, except

denies any implication that the FASC, the Dean, and the President participate equally in reviews

and avers that the review process is led by the faculty.  Defendant further avers that the policies

and procedures related to merit ratings and raises during the relevant time period are specified in

the Faculty Handbook, which is regularly updated and approved by the faculty, and which

document speaks for itself.

## COMPLAINT ¶45:

At all academic ranks, Vassar women professors are awarded lower merit designations than men despite comparable or superior performance.  For example, courses taught by women have comparable or higher student enrollments, women have brought in the largest external grants, and women serve on uncompensated faculty committees in greater numbers proportionally than men—yet women systematically receive lower merit rankings.  A substantial body of scientific research confirms this discrimination is endemic in academia.[11]  The salary

---

[11] *See, e.g.*, Anne Boring, Kellie Ottoboni & Philip B. Stark, *Student Evaluations of Teaching (Mostly) Do Not Measure Teaching Effectiveness*, SCIENCEOPEN RESEARCH Vol. 0(0):1-11 (2016); Philip B. Stark & Richard Freishtat, *An Evaluation of Course Evaluations*, SCIENCEOPEN RESEARCH. Vol. 0(0):1-7 (2014); Burns-Glover, A. L., & Veith, D. J, *Revisiting Gender and Teaching Evaluations: Sex Still Makes a Difference*, JOURNAL OF SOCIAL BEHAVIOR & PERSONALITY, 10(6), 69-80 (1995).

cards, for example, perpetuate gender discrepancies by entrenching previous tainted merit designations and deficient salary recommendations.

**ANSWER:**

Defendant denies the allegations set forth in Paragraph 45 of the Complaint, except lacks knowledge or information sufficient to form a belief as to whether "[a] substantial body of scientific research confirms this discrimination is endemic in academia," and therefore denies same.

**COMPLAINT ¶46:**

Vassar has long been aware of the disparate impact its merit rating system has on women. Figures on full professors' merit ratings recently provided by Biniam Tesfamariam, of Vassar's Office of Institutional Research, reflect Vassar's awareness of a gender disparity in merit ratings. According to this data, men receive higher average merit ratings (2.41) than women (2.24):



First, the mean merit points of each full professor was calculated. Then the mean score was aggregated by gender.

**ANSWER:**

Defendant denies the allegations set forth in Paragraph 46 of the Complaint.

**COMPLAINT ¶47:**

Despite the longstanding and clear evidence that Vassar's merit rating system is biased against women, Vassar continues to rely on merit ratings to make compensation and promotion decisions.

**ANSWER:**

Defendant denies the allegations set forth in Paragraph 47 of the Complaint.

**IV.    Plaintiffs' Representative Experiences**

**COMPLAINT ¶48:**

Plaintiff Wendy Graham is a Professor of English.  She earned her undergraduate degree from the University of California, Berkeley in 1979, her Masters from Columbia University in 1980, and her Ph.D. from Columbia University in 1989.  She began her employment at Vassar in 1988 as a visiting assistant professor, was put on tenure track in 1990, was tenured in 1997, and was promoted to full professor in 2011.  She has served as Chair of the English Department since 2019, having been voted to a second term that ends in 2025.  Prior to that, she served as Associate Chair of English from 2014-18, and Associate Co-Chair of English from 2010-14.

**ANSWER:**

Defendant admits that Plaintiff Graham began her Vassar employment as a visiting

professor in 1988, received a tenure track position in 1990, and received tenure in 1997.

Defendant admits that Plaintiff Graham has served as Chair of the English department since

2019, with her second term concluding in 2025.  Defendant lacks knowledge or information

sufficient to form a belief as to Professor Graham's education and experience before Vassar, or

as to whether she served as Associate Chair of the English Department from 2014 to 2018.

Defendant denies the remainder of the allegations in Paragraph 48.

**COMPLAINT ¶49:**

Professor Graham's areas of teaching and research are American and British literature, literary theory, gender, and culture studies.  She has authored two books: *Critics, Coteries, and Pre-Raphaelite Celebrity* (Columbia University Press, 2017), and *Henry James's Thwarted Love* (Stanford University Press, 1999).

**ANSWER:**

Defendant admits the allegations set forth in Paragraph 49 of the Complaint.

**COMPLAINT ¶50:**

Despite her distinguished record, Vassar has over the years compensated all of the following men more than Professor Graham for substantially similar work, in violation of the law: Mark C. Amodio, Robert K. Brigham, Andrew Davison, Marc Michael Epstein, Donald W.

21

Foster, Christopher John Grabowski, Kevin S. Holloway, Paul Kane, Amitava Kumar, John Howard Long, Bert Lott, Brian Lukacher, John F. Meehan, Himadeep Muppidi, Joseph Nevins, Thomas Gregory Porcello, Ismail Rashid, Stephen R. Rock, Dan Ungurianu, Bryan W. Van Norden, and Jeffrey R. Walker. Beginning as early as 2012, Professor Graham requested a salary equity study to address her pay gap. Vassar refused to adjust her salary then, and to date, Vassar continues to underpay Professor Graham relative to her male peers.

**ANSWER:**

Defendant admits that Plaintiff Graham requested an equity review of her compensation and Vassar did not adjust Plaintiff Graham's salary as a result of that equity review. Defendant denies the remainder of the allegations set forth in Paragraph 50 of the Complaint.

**COMPLAINT ¶51:**

Professor Graham was directly harmed by Vassar's discriminatory promotion and performance evaluation systems. When she became eligible for promotion to full professor, it was clear to Professor Graham that she did not have the support within her Department necessary to be successful in the process—support that was readily provided to her male colleagues. At every turn, Vassar actively discouraged Professor Graham. For example, in 1997 Vassar told Professor Graham that the manuscript for her first book was unlikely to be published. Not two months later, the book was accepted for publication *without revision* by the Stanford University Press. Throughout her tenure, Vassar also wrongly suggested that Professor Graham's parenting responsibilities—and specifically her commuting hours—would frustrate her promotion; this, while Vassar permitted her male colleagues to regularly commute longer hours without comment. For years, Professor Graham also witnessed Vassar's discriminatory promotion process disadvantage other women—time and time again, eligible women (like herself) were passed up for promotion, while less qualified men advanced.

**ANSWER:**

Defendant lacks knowledge or information sufficient to form a belief as to whether it was clear to Plaintiff Graham that "she did not have the support within her Department necessary to be successful in the process—support that was readily provided to her male colleagues." Defendant denies the remainder of the allegations set forth in Paragraph 51 of the Complaint.

**COMPLAINT ¶52:**

As a result of Vassar's discriminatory promotion process, Professor Graham's promotion to full professor was delayed in comparison to her male colleagues. Despite being eligible for promotion to full professor as early as 2003, Professor Graham was not promoted to full professor until 2011—an eight-year delay. Over the course of this eight-year delay, at least 20

men who started either with or after Professor Graham were promoted to full professor before she was.  For example, though they both joined Vassar in 1988, Mark Amodio was promoted *nine years before* Professor Graham.  And none of the 18 men who joined Vassar after Professor Graham, but were promoted before Professor Graham, had to wait the 14 years after tenure that she did to be promoted to full professor: 14 were promoted within six years, one within seven, and three between eight and ten.  Moreover, Vassar's significant delay in promoting Professor Graham stands in stark contrast to her male colleagues in the English Department, five of whom were promoted at or before eligibility, and one of whom was promoted within seven years.

**ANSWER:**

Defendant admits that Plaintiff Graham was promoted to full professor in 2011.

Defendant denies the remainder of the allegations set forth in Paragraph 52 of the Complaint,

except lacks knowledge or information sufficient to form a belief as to Plaintiffs' allegations

regarding the unidentified male professors referenced in this paragraph, as Plaintiffs have not

provided sufficient information to identify such individuals.

**COMPLAINT ¶53:**

Throughout her tenure at Vassar, Professor Graham has also been unfairly evaluated relative to her male peers.  Despite being highly regarded for her scholarly work, she received a "distinction" rating only in the years in which she published a book; otherwise she received the lesser "merit" or "high merit" ratings, or was not rated at all.  For example, in the same year Professor Graham was evaluated for promotion to full professor, she received only a "merit" rating despite the fact that in the preceding three years she had published four peer-reviewed articles, none of which were on the same topic as the manuscript she was also in the process of completing, and despite the fact that during this period she was also serving as the editorial board for the esteemed Henry James Review academic journal.  Professor Graham complained to Vassar about these unfair ratings on multiple occasions.  For example, Professor Graham complained twice in the late 1990s about Vassar's failure to fairly rate her work, despite her excellent publication record and positive CEQs (i.e., student evaluation scores).  Professor Graham complained again in 2010 when her review letters continued not to reflect either her significant scholarly contributions or her positive teaching record.  To date, Vassar has not corrected the problem.

**ANSWER:**

Defendant denies the allegations set forth in Paragraph 53 of the Complaint, except

admits that Plaintiff Graham variously received merit or high merit ratings throughout her career,

including a rating of merit during the year she was promoted to full professor.

**COMPLAINT ¶54:**

**Plaintiff Maria Höhn** is Professor Emerita of History on the Marion Musser Lloyd '32 Chair.  She earned her undergraduate degree from Millersville State University in 1991, and her Ph.D. from the University of Pennsylvania in 1995.  She began her employment at Vassar in 1996 after teaching one year as a lecturer at the University of Pennsylvania, was tenured in 2003, and was promoted to full professor in 2010.  In 2008, the Dean of the Faculty appointed Professor Höhn for a three-year term as Director of Faculty Research Development.  In 2011, then-President Cappy Hill appointed Professor Höhn for a three-year term to establish and direct the Andrew W. Mellon-funded Vassar-West Point Civilian Military Initiative.  From 2015-18, she served as Chair of the Department of History.  In 2016, the Dean of the Faculty and the President appointed her to direct the 5 College-Consortium on Forced Migration and Displacement supported by a $2.5 million Andrew W. Mellon Grant that she secured.

**ANSWER:**

Defendant admits that Plaintiff Hohn is Professor Emerita of History and the Marion Musser Lloyd '32 Chair.  Defendant admits that Plaintiff Hohn was tenured in 2003, and was promoted to full professor in 2010.  Defendant admits that the Dean of the Faculty appointed Plaintiff Hohn to Director of Faculty Research and Development in 2008 for a three-year term. Defendant admits that then-President Cappy Hill appointed Plaintiff Hohn to a three-year term to establish and direct the Andrew W. Mellon-funded Vassar-West Point Civilian Military Initiative.  Defendant admits that Hohn served as Chair of the History Department from 2015 to 2018.  Defendant admits that the Dean of the Faculty and the President appointed Plaintiff Hohn to direct the Consortium on Forced Migration and Displacement supported by a $2.5 million Andrew W. Mellon Grant.  Defendant lacks knowledge or information sufficient to form a belief as to Professor Hohn's education and experience before Vassar.  Defendant denies the remainder of the allegations set forth in Paragraph 54 of the Complaint.

**COMPLAINT ¶55:**

Professor Höhn's area of research and teaching is history.  She is the author, co-author, and editor of: GIs and Fräuleins (University of North Carolina Press, 2002), *A Breath of Freedom: The Civil Rights Struggle, African American GIs, and Germany* (Palgrave Macmillan, 2010), *Over There: Living with the U.S. Military Empire from World War Two to the Present* (Duke University Press, 2010), *In the Twilight of Empire: Count Alois Lexa von Aehrenthal*

24

*(1854-1912); From Foreign Minister in Waiting to de facto Chancellor* (Vandehoeck & Ruprecht Verlage, 2020), and *Migration, Displacement, and Higher Education: Now What?* (Palgrave Macmillan, 2023).  Her scholarship has been translated into German, Korean, and Chinese, and has been adapted for both television and film.

**ANSWER:**

Defendant admits the allegations set forth in Paragraph 55 of the Complaint.

**COMPLAINT ¶56:**

Despite her distinguished record, Vassar has over the years compensated all of the following men more than Professor Höhn for substantially similar work, in violation of the law: Robert K. Brigham, Andrew Davison, and John F. Meehan.

**ANSWER:**

Defendant denies the allegations set forth in Paragraph 56 of the Complaint.

**COMPLAINT ¶57:**

Professor Höhn was directly harmed by Vassar's discriminatory promotion and performance evaluation systems.  When she became eligible for promotion to full professor, it was clear to Professor Höhn that she did not have the support within her Department necessary to be successful in the process—support that was readily provided to her male colleagues, who were readily encouraged to advance through the ranks at Vassar.  As a result, Professor Höhn's promotion to full professor was delayed in comparison to her male colleagues.  Both of the men who joined Vassar in the same year as Professor Höhn were promoted before she was; for example, though they both joined Vassar in 1996, Andrew Davison was promoted three years before Professor Höhn.  When Professor Höhn was promoted in 2010, she was promoted alongside three men—all three of whom had fewer years of experience at Vassar than Professor Höhn.

**ANSWER:**

Defendant lacks knowledge or information sufficient to form a belief as to whether it

"was clear to Professor Höhn that she did not have the support within her Department necessary

to be successful in the process—support that was readily provided to her male colleagues, who

were readily encouraged to advance through the ranks at Vassar."  Defendant further lacks

knowledge or information sufficient to form a belief as to the truth of Plaintiffs' allegations

regarding the unidentified male professors referenced in this paragraph, as Plaintiffs have not

provided sufficient information to identify such individuals.  Defendant denies the remainder of

the allegations set forth in Paragraph 57 of the Complaint.

**COMPLAINT ¶58:**

This discrimination cannot be explained by Professor Höhn's academic record— which is excellent—or performance reviews—in which she consistently received the highest merit rating of "distinction."  Rather, Professor Höhn was delayed by a system that fundamentally favors men over comparable women and ensures that women take longer to advance.  Moreover, in order to receive "distinction," Professor Höhn was required to substantially outperform her male colleagues—in teaching, scholarship and service—all to receive the same rating, and only to be paid less for her outsized efforts.

**ANSWER:**

Defendant denies the allegations set forth in Paragraph 58 of the Complaint.

**COMPLAINT ¶59:**

**Plaintiff Mia Mask** is a Professor of Film.  She earned her undergraduate degree from Tufts University in 1991, and her Ph.D. from New York University in 2001.  She began her employment at Vassar in 2000, was tenured in 2007, and was promoted to full professor in 2016.  She is the Mary Riepma Ross '32 Chair, has served as Chair of the Film Department, and recently completed a three-year term as Vassar's Faculty Policy and Conference Committee Chair.

**ANSWER:**

Defendant admits that Plaintiff Mask was employed by Vassar in 2000, and achieved

tenure in 2007, and was promoted to full professor in 2016.  Defendant admits that Plaintiff

Mask served as the Mary Riepman Ross '32 Chair, has served as Chair of the Film Department

and served a three-year term on Vassar's Faculty Policy and Conference Committee as Chair.

Defendant lacks knowledge or information sufficient to form a belief as to Professor Mask's

education and experience before Vassar.  Defendant denies the remainder of the allegations set

forth in Paragraph 59 of the Complaint.

**COMPLAINT ¶60:**

Professor Mask's areas of research and teaching include African American cinema, documentary history, feminist film theory, African national cinemas, and genre films.  She is the

author of *Divas on Screen: Black Women in American Film* (University of Illinois Press, 2009), editor of *Contemporary Black American Cinema* (Routledge, 2012), editor of *Poitier Revisited: Reconsidering a Black Icon in the Obama Age* (Bloomsbury, 2014), and sole author of *Black Rodeo: A History of the African American Western* (University of Illinois Press, 2023). Her commentary and interviews have been on Turkish public broadcast TRT World, National Public Radio programs "Tell Me More," "Marketplace," and "Morning Edition," and in documentaries for the Smithsonian Channel, the Criterion Channel, and CNN's *The Movies*.

**ANSWER:**

Defendant admits the allegations set forth in Paragraph 60 of the Complaint, except

Defendant lacks knowledge or information sufficient to form a belief as to whether Professor

Mask's commentary and interviews have been published in all of the stated sources.

**COMPLAINT ¶61:**

Despite her distinguished record, Vassar has over the years compensated all of the following men more than Professor Mask for substantially similar work, in violation of the law: Kevin S. Holloway, Leonard Nevarez, John F. Meehan, Himadeep Muppidi, Joseph Nevins, Thomas Gregory Porcello, Ismail Rashid, and Dan Ungurianu.

**ANSWER:**

Defendant denies the allegations set forth in Paragraph 61 of the Complaint.

**COMPLAINT ¶62:**

Professor Mask was directly harmed by Vassar's discriminatory promotion and performance evaluation systems. When she became eligible for promotion to full professor, Professor Mask was discouraged from applying, primarily because of a recent maternity leave, which she was led to believe would harm her chances of promotion. As a result, Professor Mask's promotion to full professor was delayed in comparison to her male colleagues, who were expressly encouraged to apply. For example, only one other man—Himadeep Muppidi—joined Vassar in the same year as Professor Mask, but Professor Muppidi was promoted four years before Professor Mask. At least seven men who started after Professor Mask were promoted to full professor before she was, and none had to wait the nine years after tenure that Professor Mask did for the promotion: six were promoted within six years, and one within seven. And when Professor Mask was finally promoted in 2016, she was promoted alongside two men who had fewer years of experience at Vassar—one who started two years after Professor Mask and another who started seven years after Professor Mask.

**ANSWER:**

Defendant denies the allegations set forth in Paragraph 62 of the Complaint, except lacks

knowledge or information sufficient to form a belief as to Plaintiffs' allegations regarding the

27

unidentified male professors referenced in this paragraph, as Plaintiffs have not provided

sufficient information to identify such individuals.

## COMPLAINT ¶63:

This discrimination cannot be explained by Professor Mask's excellent publication record, service record, or performance reviews, as she has consistently received the highest merit rating of "distinction" for well over a decade.  Rather, Professor Mask was delayed because Vassar's promotion system fundamentally favors men over women and ensures that women take longer to advance.  Moreover, in order to receive "distinction," Professor Mask was required to substantially *outperform* her male colleagues—in teaching, scholarship and service— all to receive the same rating, and only to be paid less for her outsized efforts.  Additionally, early in her career Professor Mask received unfair merit ratings that were rooted in CEQs (i.e., student evaluation scores), which are well understood to disparately impact women.  The discriminatory effects of these early, unfair merit ratings have persisted—and compounded— over time.

## ANSWER:

Defendant denies the allegations set forth in Paragraph 63 of the Complaint.

## COMPLAINT ¶64:

**Plaintiff Cindy Schwarz** is a Professor of Physics.  She earned her undergraduate degree from Binghamton University in 1980, her Masters from Yale University in 1983, and her Ph.D. from Yale University in 1985.  She began her employment at Vassar in 1985, was tenured in 1992, and was promoted to full professor in 2006.  She has served as Department Chair three times, in 1999-2001, 2005-2008, and 2011-2014.  She was the recipient of a prestigious national teaching award in 2017—The David Halliday and Robert Resnick Award for Excellence in Undergraduate Physics Teaching.  She is also a fellow of the American Association of Physics Teachers (AAPT).

## ANSWER:

Defendant admits that Plaintiff Schwarz is a Professor of Physics.  Defendant admits that

Plaintiff Schwarz began her employment at Vassar in 1985, was tenured in 1992, and was

promoted to full professor in 2006.  Defendant admits that Plaintiff Schwarz received the David

Halliday and Robert Resnick Award for Excellence in Undergraduate Physics Teaching and is a

fellow of the American Association of Physics Teachers.  Defendant lacks knowledge or

information sufficient to form a belief as to Professor Schwarz's education and experience before

Vassar.  Defendant denies the remainder of the allegations set forth in Paragraph 64.

**COMPLAINT ¶65:**

Professor Schwarz's area of teaching and research is physics.  She has authored many papers (including 14 in peer-reviewed journals) and four books (several of which have been published in second and third editions)—*A Tour of the Subatomic Zoo: A Guide to Particle Physics* (American Institute of Physics, 1992; Springer, 1996; Morgan & Claypool Publishers and IOP, 2016), *Tales from the Subatomic Zoo* (Small World Books, 2002), *Interactive Physics Player Workbook* (Prentice Hall, 1995, 2004), and *Adventures in Atomville: The Macroscope* (Small World Books, 2009).

**ANSWER:**

Defendant admits that Professor Schwarz's area of teaching and research is physics.

Defendant lacks knowledge or information sufficient to form a belief as to whether Plaintiff

Schwarz has authored "many papers" and the stated details regarding her publication record.

Defendant admits that Plaintiff authored *A Tour of the Subatomic Zoo: A Guide to Particle*

*Physics* (American Institute of Physics, 1992; Springer, 1996; Morgan & Claypool Publishers

and IOP, 2016), *Tales from the Subatomic Zoo* (Small World Books, 2002), *Interactive Physics*

*Player Workbook* (Prentice Hall, 1995, 2004), and *Adventures in Atomville: The Macroscope*

(Small World Books, 2009).

**COMPLAINT ¶66:**

Despite her distinguished record, Vassar has over the years compensated all of the following men more than Professor Schwarz for substantially similar work, in violation of the law: Mark C. Amodio, Robert K. Brigham, Andrew K. Bush, Donald W. Foster, Brian J. Godfrey, Paul Kane, John Howard Long, Brian Lukacher, John F. Meehan, Stephen R. Rock, and Paul Russell.  Beginning as early as 2008, Professor Schwarz repeatedly requested an equity review to correct these disparities, but her requests were either ignored or declined by the Vassar administration.  On at least one occasion, Professor Schwarz was told by Vassar that her request for an equity review had "slipped through the cracks."

**ANSWER:**

Defendant admits that Schwarz requested an equity review on multiple occasions.

Defendant denies the remainder of the allegations set forth in Paragraph 66 of the Complaint.

**COMPLAINT ¶67:**

Professor Schwarz was directly harmed by Vassar's discriminatory promotion and performance evaluation systems.  Despite being eligible for promotion to full professor as early as 1998, she was not promoted to full professor until 2006—an eight-year delay.  Over the course of this eight-year promotion delay, Professor Schwarz was unfairly denied promotion three times while numerous male professors were promoted despite having shorter tenure and comparable (or lesser) records.  Indeed, at least 11 men who started either with or after Professor Schwarz were promoted to full professor before she was, and none of them had to wait anything close to the 14 years after tenure that Professor Schwarz did for the promotion: eight were promoted within six years, two within seven, and one within eight.  For example, Professor John Long joined Vassar six years *after* Professor Schwarz, but was promoted two years before Professor Schwarz, after serving as an Associate professor for only the requisite six years.  Professor Schwarz, in comparison, was not promoted for 14 years after tenure despite her consistently excellent letters and strong publication record.

**ANSWER:**

Defendant denies the allegations set forth in Paragraph 67 of the Complaint, except lacks knowledge or information sufficient to form a belief as to Plaintiffs' allegations regarding the unidentified male professors referenced in this paragraph, as Plaintiffs have not provided sufficient information to identify such individuals.

**COMPLAINT ¶68:**

Throughout her tenure at Vassar, Professor Schwarz has also been unfairly evaluated relative to her male peers.  She never received a "distinction" rating, received a "high merit" rating only three times, and received "merit" at every other review.  These reviews have never faulted Professor Schwarz's excellent academic record, but instead focused on Professor Schwarz's CEQs (i.e., student evaluation scores).  Vassar relied on these scores to unfairly rate and unfairly compensate Professor Schwarz despite widespread recognition, scientific research, and repeated reminders from Professor Schwarz herself that such scores disparately impact women.  For example, Professor Schwarz complained about precisely this issue in connection with her denial of promotion in 2003; in a written response to that complaint, Vassar acknowledged Professor Schwarz's "concerns about gender bias," and stated that while the College "would like to see more research into the gender bias issue" there was a "ban on this research at Vassar."  Vassar did not correct the issue then, and has not corrected it to date.

**ANSWER:**

Defendant admits that Plaintiff Schwarz has never received a distinction rating.

Defendant denies the remainder of the allegations set forth in Paragraph 67 of the Complaint.

311700805v.4

**COMPLAINT ¶69:**

**Plaintiff Debra Zeifman** is a Professor of Psychological Science.  She earned her undergraduate degree from Cornell University in 1988, Masters from Cornell University in 1993, and Ph.D. from Cornell University in 1996.  She began her employment at Vassar in 1996, was tenured in 2003, and was promoted to full professor in 2013.  From 2010-2011 Professor Zeifman was a visiting professor at Haverford College.  Professor Zeifman served as Dean of Studies from 2019-2021, a position in which she was responsible for implementing the college's curriculum and educational policies, overseeing academic advising, and carrying out faculty legislation affecting the fulfillment of academic requirements for the degree.  Prior to her appointment as Dean of Studies, Professor Zeifman served as Chair of Psychological Science (2014-2017), Director of Jewish Studies (2009-2010), and Chair of Vassar's Institutional Review Board (2006-2009).  In addition, she has chaired and served on numerous faculty committees throughout her tenure at Vassar.

**ANSWER:**

Defendant admits that Plaintiff Zeifman is a Professor of Psychological Science.

Defendant admits that Plaintiff Zeifman began her employment at Vassar in 1996, was tenured in

2003, and was promoted to full professor in 2013.  Defendant admits that from 2010-2011

Plaintiff Zeifman was a visiting professor at Haverford College.  Defendant admits that Plaintiff

Zeifman served as Dean of Studies from 2019-2021, a position in which she was responsible for

implementing the college's curriculum and educational policies, overseeing academic advising,

and carrying out faculty legislation affecting the fulfillment of academic requirements for the

degree.  Defendant further admits that Plaintiff Zeifman served as Chair of Psychological

Science, Director of Jewish Studies, and Chair of Vassar's Institutional Review Board.

Defendant lacks knowledge or information sufficient to form a belief as to whether Plaintiff

Zeifman "chaired and served on numerous faculty committees throughout her tenure at Vassar,"

as Plaintiffs have not sufficiently identified such committees.  Defendant lacks knowledge or

information sufficient to form a belief as to Professor Zeifman's education and experience before

Vassar.  Defendant denies the remainder of the allegations set forth in Paragraph 69 of the

Complaint.

**COMPLAINT ¶70:**

Professor Zeifman teaches courses in developmental psychology, research methods, Holocaust studies, and evolutionary psychology.  She has authored 28 scholarly articles, including several widely cited peer-reviewed pieces and invited book chapters.  She is the first author on 21 of her 28 publications, presents regularly at national and international conferences, and is widely regarded as a leading expert in the field of infant communication, parent-child bonding, and attachment theory.

**ANSWER:**

Defendant admits that Professor Zeifman teaches courses in developmental psychology, research methods, Holocaust studies, and evolutionary psychology.  Defendant lacks knowledge or information sufficient to form a belief as to the remaining allegations set forth in Paragraph 70 regarding the stated details regarding Professor Zeifman's publication record and whether Professor Zeifman "presents regularly at national and international conferences, and is widely regarded as a leading expert in the field of infant communication, parent-child bonding, and attachment theory."

**COMPLAINT ¶71:**

Despite her distinguished record, Vassar has over the years compensated all of the following men more than Professor Zeifman for substantially similar work, in violation of the law: Christopher B. Bjork, Robert K. Brigham, Andrew Davison, Christopher John Grabowski, Kevin S. Holloway, Bert Lott, John F. Meehan, Himadeep Muppidi, Leonard Nevarez, Joseph Nevins, Thomas Gregory Porcello, Ismail Rashid, Stephen M. Rooks, and Dan Ungurianu.

**ANSWER:**

Defendant denies the allegations set forth in Paragraph 71 of the Complaint.

**COMPLAINT ¶72:**

Professor Zeifman was directly harmed by Vassar's discriminatory promotion and performance evaluation systems.  For years, Professor Zeifman witnessed Vassar's discriminatory promotion process disadvantage women, and was herself penalized for resisting that discrimination.  For example, before Professor Zeifman became eligible for promotion to full professor, she resisted Vassar's attempt to unfairly deny another woman tenure by writing a dissenting letter in support of this woman's promotion.  The woman was not promoted, and in response to speaking up in her favor, Professor Zeifman was rebuked.  Specifically, a senior faculty member—who would later become Chair of Professor Zeifman's Department—publicly

berated Professor Zeifman for supporting this woman's promotion. Years later, when Professor Zeifman approached the same colleague (by then Chair of the Department) about her promotion to full professor, he expressly discouraged her, citing an unpaid leave she had taken in connection with a pregnancy and repeatedly stating that her senior colleagues would "go after her" if she attempted the promotion. Professor Zeifman persisted in seeking promotion, despite this discouragement and discrimination, and received a harsh departmental review and a nearly unanimous recommendation against promotion. Because Professor Zeifman's scholarship, service, and teaching records were unimpeachable, the review attempted instead to refute irrefutable facts. For example, it asserted that Professor Zeifman's excellent CEQs (i.e., student evaluation scores) must not have been the product of excellent teaching (they were), but of her failure to be sufficiently "rigorous" with students (she was), and asserted that the unanimous positive external reviews Professor Zeifman received from experts in her field must have been based on pre-tenure work (though they explicitly were not). Professor Zeifman was promoted to full professor only after she submitted a fulsome rebuttal of this review.

**ANSWER:**

Defendant admits that Zeifman was promoted to full professor. Defendant denies the remainder of the allegations set forth in Paragraph 72 of the Complaint.

**COMPLAINT ¶73:**

As a result of Vassar's discriminatory promotion process, Professor Zeifman's promotion to full professor was delayed in comparison to her male colleagues. Both men who joined Vassar in the same year as Professor Zeifman were promoted to full professor well before she was promoted. For example, though they both joined Vassar in 1996, Andrew Davison was promoted six years before Professor Zeifman. At least ten men who started after Professor Zeifman were promoted to full professor before she was, and none had to wait the ten years after tenure that Professor Zeifman did for the promotion: eight were promoted within six years, and two within seven. For example, though Kevin Holloway joined Vassar *three years after* Professor Zeifman, he was promoted *three years before* Professor Zeifman.

**ANSWER:**

Defendant denies the allegations set forth in Paragraph 73 of the Complaint, except lacks knowledge or information sufficient to form a belief as to Plaintiffs' allegations regarding the unidentified male professors referenced in this paragraph, as Plaintiffs have not provided sufficient information to identify such individuals.

**COMPLAINT ¶74:**

This discrimination cannot be explained by Professor Zeifman's excellent publication record, service record, or performance reviews, as she has consistently received the highest merit

rating of "distinction" or the next highest rating of "high merit" since being promoted to full professor. Rather, Professor Zeifman was delayed by a system that fundamentally favors men over comparable women and ensures that women take longer to advance. Moreover, in order to receive these ratings, Professor Zeifman was required to substantially *outperform* her male colleagues—in teaching, scholarship and service—all to receive the same rating, and only to be paid less for her outsized efforts.

**ANSWER:**

Defendant denies the allegations set forth in Paragraph 74 of the Complaint.

**COMPLAINT ¶75:**

Vassar's actions have caused Plaintiffs and the Class substantial losses in earnings and other employment benefits. In addition, Plaintiffs and the Class suffered and continue to suffer emotional distress, humiliation, embarrassment, and anguish, all to their damage in an amount according to proof.

**ANSWER:**

Defendant denies the allegations set forth in Paragraph 75 of the Complaint.

**V.    Class Action Allegations**

**COMPLAINT ¶76:**

Plaintiffs bring the following Causes of Action pursuant to Federal Rule of Civil Procedure 23 on behalf of all women currently or formerly employed by Vassar as full professors between May 14, 2015 through the resolution of this action (the "Class Period"). All said persons, including Plaintiffs, are referred to herein as the Class.

**ANSWER:**

Defendant denies the allegations set forth in Paragraph 76 of the Complaint. Further

answering, Defendant denies that class treatment is appropriate in this case.

**COMPLAINT ¶77:**

The members of the Class are so numerous that joinder of all members is impracticable. Although Plaintiffs do not know the precise number of Class members, the number is greater than can be feasibly addressed through joinder.

**ANSWER:**

Paragraph 77 of the Complaint calls for a legal conclusion, to which no response is

required.  To the extent that a response is deemed required, Defendant denies the allegations set

forth in Paragraph 77 of the Complaint.

**COMPLAINT ¶78:**

There are questions of law and fact common to the Class, and these questions
predominate over any questions affecting only individual members.  Common questions include,
among others:

     a.     whether Vassar pays women less than men for substantially similar work;

     b.     whether Vassar has knowingly maintained unlawful pay disparities between
women and men;

     c.     whether Vassar's uniform compensation, promotion, and evaluation policies and
practices have a disparate impact on women;

     d.     whether Vassar maintained uniform compensation, promotion, and evaluation
policies and practices despite knowledge of their disparate impact on women;

     e.     whether Vassar's conduct, policies, and practices violate Title VII, the NY EPL,
and/or the NY HRL; and

     f.     whether compensatory damages, equitable remedies, and punitive damages for the
Class are warranted.

**ANSWER:**

Paragraph 78 of the Complaint calls for a legal conclusion, to which no response is

required.  To the extent that a response is deemed required, Defendant denies the allegations set

forth in Paragraph 78 of the Complaint.

**COMPLAINT ¶79:**

Plaintiffs' claims are typical of the claims of the Class.

311700805v.4

**ANSWER:**

Paragraph 79 of the Complaint calls for a legal conclusion, to which no response is required.  To the extent that a response is deemed required, Defendant denies the allegations set forth in Paragraph 79 of the Complaint.

**COMPLAINT ¶80:**

Plaintiffs will fairly and adequately represent and protect the interests of the Class. Plaintiffs have retained counsel competent and experienced in complex class actions and employment discrimination litigation, in particular.

**ANSWER:**

Paragraph 80 of the Complaint calls for a legal conclusion, to which no response is required.  To the extent that a response is deemed required, Defendant denies the allegations set forth in Paragraph 80 of the Complaint.

**COMPLAINT ¶81:**

Class certification is appropriate because common questions of fact and law predominate over any questions affecting only individual Class members, and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation.  The Class has been damaged and is entitled to recovery as a result of Vassar's common, uniform, unfair, and discriminatory policies and practices.  Vassar has computerized personnel data that will make calculation of damages for specific Class members straightforward.  The propriety and amount of punitive damages are based on Vassar's conduct, making these issues also common to the Class.

**ANSWER:**

Paragraph 81 of the Complaint calls for a legal conclusion, to which no response is required.  To the extent that a response is deemed required, Defendant denies the allegations set forth in Paragraph 81 of the Complaint.

311700805v.4

**FIRST CAUSE OF ACTION**
**Intentional Discrimination in Violation of Title VII**
**42 U.S.C. §§ 2000e et seq.**
**(On Behalf of Plaintiffs and the Class)**

**COMPLAINT ¶82:**

Plaintiffs hereby re-allege and incorporate by reference all allegations in every preceding paragraph as if fully set forth herein.

**ANSWER:**

Defendant hereby re-asserts its response to each respective allegation and incorporates by reference all responses to each respective allegation as if fully set forth herein.

**COMPLAINT ¶83:**

This claim is brought by Plaintiffs on behalf of themselves and the Class they seek to represent. Plaintiffs received Notices of Right to Sue from the EEOC in connection with this claim, and have thus exhausted their administrative remedies.

**ANSWER:**

Defendant admits that Plaintiffs received Notices of Right to Sue from the EEOC in connection with this claim. The remainder of the allegations in Paragraph 83 of the Complaint call for a legal conclusion, to which no response is required. To the extent that a response is deemed required, Defendant denies the remainder of the allegations set forth in Paragraph 83 of the Complaint.

**COMPLAINT ¶84:**

Vassar intentionally discriminated against Plaintiffs and the Class in violation of Title VII by, among other things:

a.    intentionally, knowingly, and/or deliberately paying women less than men for substantially similar work;

b.    implementing College-wide policies and practices that were unvalidated and discriminatory; and

c.    intentionally, knowingly, and/or deliberately utilizing policies and practices that perpetuated and increased discrimination against female full professors.

37

**ANSWER:**

Paragraph 84 of the Complaint calls for a legal conclusion, to which no response is required. To the extent that a response is deemed required, Defendant denies the allegations set forth in Paragraph 84 of the Complaint.

**COMPLAINT ¶85:**

The foregoing conduct constitutes illegal, intentional discrimination prohibited by the Title VII.

**ANSWER:**

Paragraph 85 of the Complaint calls for a legal conclusion, to which no response is required. To the extent that a response is deemed required, Defendant denies the allegations set forth in Paragraph 85 of the Complaint.

**COMPLAINT ¶86:**

Plaintiffs request relief as hereinafter described.

**ANSWER:**

Defendant denies that Plaintiffs are entitled to any relief.

**SECOND CAUSE OF ACTION**
**Disparate Impact Discrimination in Violation of Title VII**
**42 U.S.C. §§ 2000e et seq.**
**(On Behalf of Plaintiffs and the Class)**

**COMPLAINT ¶87:**

Plaintiffs hereby re-allege and incorporate by reference all allegations in every preceding paragraph as if fully set forth herein.

**ANSWER:**

Defendant hereby re-asserts its response to each respective allegation and incorporates by reference all responses to each respective allegation as if fully set forth herein.

311700805v.4

**COMPLAINT ¶88:**

This claim is brought by Plaintiffs on behalf of themselves and the Class they seek to represent. Plaintiffs received Notices of Right to Sue from the EEOC in connection with this claim, and have thus exhausted their administrative remedies.

**ANSWER:**

Defendant admits that Plaintiffs received Notices of Right to Sue from the EEOC in connection with this claim. The remainder of the allegations in Paragraph 88 of the Complaint call for a legal conclusion, to which no response is required. To the extent that a response is deemed required, Defendant denies the remainder of the allegations set forth in Paragraph 88 of the Complaint.

**COMPLAINT ¶89:**

Vassar's reliance on unvalidated policies and practices to compensate, promote, and evaluate faculty members had an adverse impact on Plaintiffs and the Class.

**ANSWER:**

Defendant denies the allegations set forth in Paragraph 89 of the Complaint.

**COMPLAINT ¶90:**

Vassar's use of these discriminatory policies and practices was and is not, and cannot be, justified by business necessity.

**ANSWER:**

Paragraph 90 of the Complaint calls for a legal conclusion, to which no response is required. To the extent that a response is deemed required, Defendant denies the allegations set forth in Paragraph 90 of the Complaint.

**COMPLAINT ¶91:**

Even if Vassar's discriminatory policies and practices could be justified by business necessity, less discriminatory alternatives exist and would have equally served any alleged necessity.

**ANSWER:**

Paragraph 91 of the Complaint calls for a legal conclusion, to which no response is required. To the extent that a response is deemed required, Defendant denies the allegations set forth in Paragraph 91 of the Complaint.

**COMPLAINT ¶92:**

The foregoing conduct constitutes illegal discrimination prohibited by Title VII.

**ANSWER:**

Paragraph 92 of the Complaint calls for a legal conclusion, to which no response is required. To the extent that a response is deemed required, Defendant denies the allegations set forth in Paragraph 92 of the Complaint.

**COMPLAINT ¶93:**

Plaintiffs request relief as hereinafter described.

**ANSWER:**

Defendant denies that Plaintiffs are entitled to any relief.

**THIRD CAUSE OF ACTION**
**Violation of the New York Equal Pay Law**
**New York Labor Law § 194**
**(On Behalf of Plaintiffs and the Class)**

**COMPLAINT ¶94:**

Plaintiffs hereby re-allege and incorporate by reference all allegations in every preceding paragraph as if fully set forth herein.

**ANSWER:**

Defendant hereby re-asserts its response to each respective allegation and incorporates by reference all responses to each respective allegation as if fully set forth herein.

**COMPLAINT ¶95:**

Throughout the Class Period, Vassar violated the NY EPL as to Plaintiffs and the Class by paying its female full professors at wage rates less than the wage rates it paid and pays to

40

male professors for substantially similar work, when viewed as a composite of skill, effort, and responsibility, and performed under similar working conditions.

**ANSWER:**

Paragraph 95 of the Complaint calls for a legal conclusion, to which no response is required. To the extent that a response is deemed required, Defendant denies the allegations set forth in Paragraph 95 of the Complaint.

**COMPLAINT ¶96:**

Vassar's failure to pay women and men equal wages for performing substantially similar work is not justified by any lawful reason.

**ANSWER:**

Paragraph 96 of the Complaint calls for a legal conclusion, to which no response is required. To the extent that a response is deemed required, Defendant denies the allegations set forth in Paragraph 96 of the Complaint.

**COMPLAINT ¶97:**

Plaintiffs request relief as hereinafter described.

**ANSWER:**

Defendant denies that Plaintiffs are entitled to any relief.

**FOURTH CAUSE OF ACTION**
**Intentional Discrimination in Violation of the New York State Human Rights Law**
**New York Executive Law §§ 296-301**
**(On Behalf of Plaintiffs and the Class)**

**COMPLAINT ¶98:**

Plaintiffs hereby re-allege and incorporate by reference all allegations in every preceding paragraph as if fully set forth herein.

**ANSWER:**

Defendant hereby re-asserts its response to each respective allegation and incorporates by reference all responses to each respective allegation as if fully set forth herein.

311700805v.4

**COMPLAINT ¶99:**

Vassar intentionally discriminated against Plaintiffs and the Class in violation of NY HRL by, among other things:

    a.    intentionally, knowingly, and/or deliberately paying women less than men for substantially similar work;

    b.    implementing College-wide policies and practices that were unvalidated and discriminatory; and

    c.    intentionally, knowingly, and/or deliberately utilizing policies and practices that perpetuated and increased discrimination against female full professors.

**ANSWER:**

Paragraph 99 of the Complaint calls for a legal conclusion, to which no response is required.  To the extent that a response is deemed required, Defendant denies the allegations set forth in Paragraph 99 of the Complaint.

**COMPLAINT ¶100:**

The foregoing conduct constitutes illegal, intentional discrimination prohibited by the NY HRL.

**ANSWER:**

Paragraph 100 of the Complaint calls for a legal conclusion, to which no response is required.  To the extent that a response is deemed required, Defendant denies the allegations set forth in Paragraph 100 of the Complaint.

**COMPLAINT ¶101:**

Plaintiffs request relief as hereinafter described.

**ANSWER:**

Defendant denies that Plaintiffs are entitled to any relief.

**FIFTH CAUSE OF ACTION**
**Disparate Impact Discrimination in Violation of the New York State Human Rights Law**
**New York Executive Law §§ 296-301**
**(On Behalf of Plaintiffs and the Class)**

**COMPLAINT ¶102:**

Plaintiffs hereby re-allege and incorporate by reference all allegations in every preceding paragraph as if fully set forth herein.

**ANSWER:**

Defendant hereby re-asserts its response to each respective allegation and incorporates by

reference all responses to each respective allegation as if fully set forth herein.

**COMPLAINT ¶103:**

Vassar's reliance on unvalidated policies and practices to compensate, promote, and evaluate faculty members had an adverse impact on Plaintiffs and the Class.

**ANSWER:**

Defendant denies the allegations set forth in Paragraph 103 of the Complaint.

**COMPLAINT ¶104:**

Vassar's use of these discriminatory policies and practices was and is not, and cannot be, justified by business necessity.

**ANSWER:**

Paragraph 104 of the Complaint calls for a legal conclusion, to which no response is

required. To the extent that a response is deemed required, Defendant denies the allegations set

forth in Paragraph 104 of the Complaint.

**COMPLAINT ¶105:**

Even if Vassar's discriminatory policies and practices could be justified by business necessity, less discriminatory alternatives exist and would have equally served any alleged necessity.

311700805v.4

**ANSWER:**

Paragraph 105 of the Complaint calls for a legal conclusion, to which no response is required. To the extent that a response is deemed required, Defendant denies the allegations set forth in Paragraph 105 of the Complaint.

**COMPLAINT ¶106:**

The foregoing conduct constitutes illegal discrimination prohibited by the NY HRL.

**ANSWER:**

Paragraph 106 of the Complaint calls for a legal conclusion, to which no response is required. To the extent that a response is deemed required, Defendant denies the allegations set forth in Paragraph 106 of the Complaint.

**COMPLAINT ¶107:**

Plaintiffs request relief as hereinafter described.

**ANSWER:**

Defendant denies that Plaintiffs are entitled to any relief.

## PRAYER FOR RELIEF

**COMPLAINT ¶108:**

WHEREFORE, Plaintiffs, on behalf of themselves and all others similarly situated, pray for the following relief:

a.  Certification of the case as a class action pursuant to Federal Rule of Civil Procedure 23;

b.  Designation of Plaintiffs as representatives of the Class;

c.  Designation of Plaintiffs' counsel of record as Class Counsel;

d.  All wages, including interest and benefits, due to Plaintiffs and Class Members in an amount to be ascertained at trial;

e.  All other damages sustained as a result of Vassar's conduct, including damages for emotional distress, humiliation, embarrassment, and anguish, in an amount to be ascertained at trial;

      f.      Exemplary and punitive damages in an amount commensurate with Vassar's ability to pay and to deter future conduct;

      g.      Declaratory relief;

      h.      Preliminary and permanent injunctive relief enjoining Vassar from violating Title VII, the NY EPL, and the NY HRL, by paying its female full professors lower wages than it pays their male counterparts for substantially similar work and from employing policies and practices that have a disparate impact on women;

      i.      Reasonable attorneys' fees and costs to the extent allowable by law;

      j.      Pre-judgment and post-judgment interest, as provided by law; and

      k.      Such further relief that the Court may deem just and proper.

**ANSWER:**

Defendant denies that Plaintiffs are entitled to any relief.  Defendant further denies that any individuals are similarly situated to Plaintiffs for purposes of class action treatment.

## JURY DEMAND

**COMPLAINT ¶109:**

Plaintiffs demand a trial by jury on all claims so triable.

**ANSWER:**

Defendant admits that Plaintiffs purport to demand a trial by jury on all claims so triable.

## GENERAL DENIAL

Defendant denies each and every allegation in the Complaint not specifically admitted herein.

## AFFIRMATIVE AND OTHER DEFENSES

Without assuming any burden of proof that it otherwise does not have as a matter of law, Defendant asserts the following affirmative and other defenses.

## FIRST DEFENSE

The Complaint fails to state a claim upon which relief can be granted.

## SECOND DEFENSE

Plaintiffs' claims for relief, and the claims of any individual Plaintiffs seek to represent or who may subsequently join this action, may be barred, in whole or in part, by the equitable doctrines of waiver, estoppel, and/or unclean hands.

## THIRD DEFENSE

To the extent it is found to have violated the New York Labor Law ("NYLL"), Defendant had a good faith basis to believe that its actions were in compliance with the law and did not act willfully to violate the law.

## FOURTH DEFENSE

Defendant's actions with regard to Plaintiffs were at all times motivated by legitimate, non-discriminatory business reasons.

## FIFTH DEFENSE

To the extent Plaintiffs seek punitive damages, they are barred because the alleged acts or omissions of the Defendant fail to rise to the level required to sustain an award of punitive damages, do not evidence a malicious, reckless or fraudulent intent to deny Plaintiffs their protected rights, and are not so wanton or willful as to support an award of punitive damages. Further, Plaintiffs are not entitled to punitive damages because Defendant made good faith efforts to comply with all applicable laws and regulations.

## SIXTH DEFENSE

Some or all of Plaintiffs' claims are barred, in whole or in part, by the applicable statutes of limitations.

## SEVENTH DEFENSE

Defendant has established and complied with policies, programs and procedures for the prevention and detection of unlawful discriminatory or retaliatory practices as required by law.

311700805v.4

## EIGHTH DEFENSE

Plaintiffs' claims are barred because any disparity in pay was due to unequal positions, or positions that were not substantially similar, where Plaintiffs did not perform equal or substantially similar work under similar working conditions of their alleged comparators, in jobs requiring equal skill, effort, and/or responsibility.

## NINTH DEFENSE

Plaintiffs' claims are barred, even if positions were equal or substantially similar, because any disparity in pay was the result of a seniority system, a merit system, a system which measures earnings by quantity or quality of production, or a bona fide factor other than sex that is not based upon or derived from a sex-based differential in compensation and that is job-related and consistent with business necessity.

## TENTH DEFENSE

Plaintiffs' claims and the claims of any individual Plaintiffs seek to represent are barred because Plaintiffs and the putative class members failed, in whole or in part, to exhaust all available administrative remedies, and/or otherwise failed to comply with the statutory prerequisites to the bringing of this action.

## ELEVENTH DEFENSE

Plaintiffs' claims and the claims of any individual Plaintiffs seek to represent are barred to the extent that the allegations contained therein do not reasonably fall within the scope of claims made in any administrative EEOC charges timely filed by Plaintiffs or any putative class members with the EEOC.

311700805v.4

## TWELFTH DEFENSE

Plaintiffs' claims and the claims of any individual Plaintiffs seek to represent are barred, in whole or in part, because any recovery from Defendant would result in the unjust enrichment of Plaintiffs and any individual Plaintiffs seek to represent.

## RESERVATION OF RIGHTS

In addition to the defenses stated above, Defendant reserves the right to assert any additional affirmative and other defenses as they become known during the pendency of this action.

**WHEREFORE**, Defendant respectfully requests that the Court enter judgment in its favor against Plaintiffs as follows:

1.      Dismissing the Complaint in its entirety on the merits;

2.      Granting Defendant the costs and expenses of this action, including attorneys' fees; and

3.      Awarding Defendant such other and further relief as the Court may deem just and proper.

311700805v.4

Dated: New York, New York
       September 26, 2024

Respectfully submitted,

SEYFARTH SHAW LLP


By:  */s/ Camille A. Olson*
      Camille A. Olson (admitted pro hac vice)
      colson@seyfarth.com
      Richard B. Lapp (admitted pro hac vice)
      rlapp@seyfarth.com
      233 South Wacker Drive
      Suite 8000
      Chicago, Illinois  60606-6448
      Telephone:  (312) 460-5000
      Facsimile:  (312) 460-7000

      Maria Papasevastos
      mpapasevastos@seyfarth.com
      620 Eighth Avenue
      32nd Floor
      New York, NY 10018-1405
      Telephone:  (212) 218-5576
      Facsimile:  (212) 218-5526

      John T. Ayers-Mann (admitted pro hac
      vice)
      jayers-mann@seyfarth.com
      2029 Century Park East
      Suite 3500
      Los Angeles, California  90067-3021
      Telephone:  (310) 277-7200
      Facsimile:  (310) 201-5219

     Attorneys for Defendant
     VASSAR COLLEGE

311700805v.4