November 22, 2024

**VIA ECF**

Hon. Victoria Reznik
United States Magistrate Judge
United States District Court for the Southern District of New York
300 Quarropas Street
White Plains, NY 10601

Re: Graham et al v. Vassar College, No. 7:23-cv-07692

Dear Judge Reznik:

Pursuant to the Court's instructions during the October 15, 2024 case management conference and the Minute Entry, dated October 16, 2024 (ECF No. 59), the parties hereby submit a joint letter on the question of whether to allow Defendant Vassar College ("Vassar" or "Defendant") the opportunity to file its own opening motion against class certification, separate from any opposition to Plaintiffs' motion.

Vassar's position on this issue is below, and Plaintiffs' position follows.

Respectfully submitted,

SEYFARTH SHAW LLP

*/s/ Maria Papasevastos*

Maria Papasevastos
*Counsel for Defendant Vassar College*

LIEFF CABRASER HEIMANN & BERNSTEIN, LLP

*/s/ Michelle A. Lamy*

Michelle A. Lamy
*Counsel for Plaintiffs and the Proposed Class*





**I. Vassar's Position**

Vassar seeks to preserve its right to file an early affirmative motion to deny class certification to address a discrete issue that goes to the heart of Plaintiffs' ability to establish class certification – the issue of class conflicts. Vassar anticipates that discovery will reveal that the proposed class consists of female faculty members who were decision-makers or participated in the alleged discriminatory pay and/or promotion decisions at issue in this case. Should the evidence reveal such facts, class treatment would be improper because the proposed class would present irreconcilable conflicts of interest. This threshold question can be raised with this Court at an earlier stage than other issues that go to class certification, and would not require expert discovery. Vassar thus submits that it would be more efficient, and consistent with Rule 23(c)(1)(A) to present this issue to the Court at an early practicable time, once the parties have had a sufficient opportunity to conduct discovery on the issue. Such a motion would also not be duplicative of any subsequent motion filed by Plaintiffs, as Plaintiffs' motion would necessarily be broader and dependent on other facts and evidence than Vassar's anticipated motion on this narrow threshold issue.

**A. Rule 23 and Recognized Federal Procedural Practice Contemplate An Affirmative Motion to Deny Class Certification Made By the Defendant**

Vassar seeks to move to deny class certification "[a]t an early practicable time," consistent with Rule 23(c)(1)(A) of the Federal Rules of Civil Procedure and recognized federal procedural practice. Vassar believes the evidence will show that the proposed class is inappropriate because a substantial number of alleged class members were involved in the hiring, performance, pay, and promotion decisions which are at issue in this case. Consequently, they are in irreconcilable conflict with the other members of the putative class, and class certification is not appropriate.

Rule 23(c)(1)(A) of the Federal Rules of Civil Procedure provides, "At an early practicable time after a person sues or is sued as a class representative, the court must determine by order whether to certify the action as a class action." Fed. R. Civ. P. § 23(c)(1)(A). Commonly, this is accomplished by the plaintiff filing a motion for class certification. However, federal practice also contemplates an affirmative motion to deny class certification made by the defendant. This practice point is clearly laid out in Moore's Federal Practice as follows:

> In actions involving a proposed plaintiff class, the named plaintiff generally moves for an order certifying the class. The defendant need not wait for the plaintiff to act, however. *The defendant may move for an order denying class certification.* Rule 23 does not specify which party must make the motion, but rather places on the court the duty to ensure that certification is considered 'at an early practicable time'. Accordingly, the court may, *and should*, consider a motion by either party even if made early in the litigation, provided that both parties have had a sufficient opportunity to conduct discovery on certification issues and otherwise prepare to litigate the motion.

5–23 Moore's Federal Practice 3d § 23.82 (internal citations omitted) (emphasis added).

Indeed, courts in the Second Circuit have permitted defendants to file motions to deny class certification, expressly citing the procedural appropriateness of such a motion. *See*





*Fedotov v. Peter T. Roach & Assocs., P.C.*, 354 F. Supp. 2d 471, 478 (S.D.N.Y. 2005) ("defendant's Motion for Denial of Class Certification—a procedural 'preemptive strike' against this purported class action—is properly before this court"); *Russell v. Forster & Garbus, LLP*, No. 17-CV-4274, 2020 WL 1244804, at *3 (E.D.N.Y. Mar. 16, 2020) (granting the defendants' motion to deny class certification). Other circuits have made similar rulings. *See Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 940 (9th Cir. 2009) (recognizing that "district courts throughout the nation have considered defendants' 'preemptive' motions to deny certification") (citing cases).

For example, in *Fedotov*, the defendant moved for summary judgment and at the same time moved, pursuant to Rule 23(a)(4) for an order denying class certification on the ground that plaintiff was not a proper class representative. The court, citing Rule 23(c)(1)(A) and Moore's Federal Practice, found that "[t]he defendant may move for an order denying class certification," and so concluded defendant's motion was properly before the court. *Fedotov*, 354 F. Supp. 2d at 478. Similarly, in *Russell*, the court construed defendant's motion as a preemptive motion to deny class certification and found the motion properly before the court on defendant's motion. *Russell*, 2020 WL 1244804, at 1 n.1, 3. The *Russell* court also ultimately granted defendant's motion and denied class certification.

Plaintiffs counter that courts in this District have "noted the impropriety of Vassar's proposal," but cite only one case in support of that contention – *Cruz v. Hook-Superx, LLC*, No. 09 CIV. 7717, 2010 WL 3069558, at *4 (S.D.N.Y. Aug. 5, 2010). Contrary to Plaintiffs' argument, Judge Crotty in *Cruz* made no generalized finding that an affirmative motion to deny class certification is improper. Indeed, in *Cruz*, rather than not considering defendants' motion outright based on the purported impropriety of such motion, the court considered the defendants' arguments but ultimately found against defendants after an analysis of the merits. *Id.* at *3. Further, *Cruz* is inapposite because the defendants in that case moved to deny class certification before any discovery had been conducted. *Id.* at *4. Here, Vassar contemplates that discovery will be conducted on the class conflict issue, and further anticipates that at an early stage the evidence will show that class certification is inappropriate.

### B. Vassar Anticipates That The Record Will Show Threshold Deficiencies in Plaintiffs' Case, Particularly With Respect to Class Conflicts, Such That Class Treatment Would Be Inappropriate

Vassar does not seek to file a "mirror image" motion at the same time as Plaintiffs' anticipated motion for class certification. Rather, Vassar believes that the evidence in this case will reveal certain deficiencies in Plaintiffs' ability to establish that the purported class is maintainable under the threshold requirements of Rule 23(a). Vassar believes that discovery will reveal these issues earlier in the discovery period than some other issues related to class certification. Also, there would be no expert discovery needed in support of this threshold conflict issue. Instead of having to wait for Plaintiffs to file a motion for class certification accompanied by expert discovery and reports, it would be more efficient, and consistent with Rule 23(c)(1)(A), to allow Vassar to affirmatively make a motion "[a]t an early practicable time" when those particularly deficiencies are revealed through discovery.

Here, Vassar believes discovery will establish that certain female Full Professor putative class members were substantively involved in decisions regarding hiring, performance evaluation, merit increases, and promotions, which are the foundational at-issue actions here





which give rise to each of Plaintiffs' claims. If some class members were decision-makers or participated in the alleged discriminatory pay and/or promotion decisions at issue in this case, those class members will be in conflict with other members of the class; as a result, Plaintiffs will be unable to establish that class treatment is appropriate.

As set forth in Vassar's Governance and other policies, members of Vassar's Faculty Appointment and Salary Committee ("FASC") substantively participate in appointments, reappointments, promotions, granting tenure, and reviewing dismissals; and the Full Professors who sit on the FASC act in cases of promotion from Associate to Full Professor, and in granting tenure to persons hired at the rank of Full Professor. *See* The Governance, at 50-51; Faculty Handbook at 68-86. Vassar believes the record will reveal that in each and every year during the relevant time period, out of the three Full Professor members of the FASC, one or two were female.

In addition, Vassar Department Chairs also have involvement in decisions related to hiring, performance evaluation, merit increases, and promotion. Numerous female Full Professors who would also be putative class members held the role of Department Chair during the relevant time period. In fact, named Plaintiffs Wendy Graham, Maria Hoehn and Debra Zeifman all held Department Chair roles in their respective departments in multiple years.

Overall, Vassar estimates that 20% of the putative class members have held positions on the FASC. Further, during the relevant time period, approximately 64% of the putative class members held positions as Department Chairs or Program Directors. And there are likely even more professors who would have held these roles before the relevant time period, and thus would have been involved in the at-issue historical hiring, compensation and promotion decisions.

Plaintiffs acknowledge that Department Chairs and FASC members play important roles in decisions at issue in this litigation. For example, Plaintiffs allege in their complaint:

> The extension of contract review involves only the Department, the Dean of the Faculty, and the President, and on occasion, the Faculty Appointment & Salary Committee (FASC). The reappointment review involves the Department, the Dean of the Faculty, the President, and FASC. The tenure review, which includes promotion from assistant professor to the rank of associate professor, includes the tenured members of the Department, the Dean of the Faculty, the President, FASC. . . . After promotion to the rank of associate professor with indeterminate tenure, a faculty member is typically reviewed every three years by the Department, FASC, the Dean of the Faculty, and the President. Generally, after six years at the rank of associate professor, a faculty member is eligible to be reviewed for a promotion to full professor. The promotion to full professor review is conducted by full professors in the Department, FASC, the Dean of the Faculty, the President. . . .

Second Amended Complaint ("SAC") ¶ 38.

In light of the anticipated discovery related to female Full Professors' involvement in key decisions related to hiring, performance evaluation, merit increases, and/or promotions, Vassar seeks to preserve its right to make a motion related to class certification so that this threshold





question can be resolved at an early stage. If the proposed class consists of female faculty members who were decision-makers or participated in the alleged discriminatory pay and/or promotion decisions at issue in this case, class treatment would be improper because the proposed class presents irreconcilable conflicts of interest. *See e.g. Moussouris v. Microsoft Corp.*, No. C15-1483JLR, 2018 WL 3328418, at *28-29 (W.D. Wash. June 25, 2018), *aff'd,* 799 F. App'x 459 (9th Cir. 2019); *Randall v. Rolls-Royce Corp.*, 637 F.3d 818, 824 (7th Cir. 2011) (finding a conflict of interest where there was "evidence that the plaintiffs participated in decisions concerning female employees' compensation that, on their theory of the case, were discriminatory"); *Wagner v. Taylor*, 836 F.2d 578, 595 (D.C. Cir. 1987) (affirming District Court's denial of class certification where, among other things, "supervisors who are members of the proposed class have been responsible for evaluating the performances of other members of the class"); *Hughes v. WinCo Foods*, No. ED CV11-00644, 2012 WL 34483, at *7 (C.D. Cal. Jan. 4, 2012) (finding conflict of interest where proposed class included "Department Managers" who, per the plaintiffs' deposition testimony, "bore significant responsibility" with respect to the practices at issue); *King v. Enterprise Rent-A-Car Co.*, 231 F.R.D. 255, 265 (E.D. Mich. 2004) (finding conflict among class members where "[c]ertain supervisor class members employed the very promotion procedures that Plaintiffs complain about."); *Donaldson v. Microsoft Corp.*, 205 F.R.D. 558, 568 (W.D. Wash. 2001); *Appleton v. Deloitte & Touche L.L.P.*, 168 F.R.D. 221, 233 (M.D. Tenn. 1996) (expressing concern about a potential conflict of interest that weighed against certification where one potential class member claimed racial discrimination in an employment evaluation, but one of the supervisors who participated in the evaluation was also African–American and a potential class member).

For example, in *Donaldson*, the court expressed "serious concerns" because two named plaintiffs were former supervisors who "were obligated to implement the very supervisory system which this litigation challenges." *Donaldson*, 205 F.R.D. at 568. Further, class members were potentially "in conflict with each other" because of the "significant number of potential class members who are current or former managers." *Id.* Given that the plaintiffs' allegations of disparate impact and disparate treatment arose "directly from the evaluation system," the court was "unable to envision a class which would include both those who implemented the ratings system and those who allegedly suffered under it. This conflict appears insurmountable." *Id.* For this reason, and others, the court denied class certification. *Id.* at 568.

Similarly, in *Moussouris*, the court found that just like *Donaldson*, the named plaintiff participated in the calibration process as a manager and thus was "'obligated to implement' the very system that Plaintiffs challenge." *Moussouris*, 2018 WL 3328418, at *29. Moreover, the court found that a "'significant number of potential class members' . . . participated in the very system and the very decisions that are alleged to be discriminatory." *Id.* As such, the court found that these conflicts of interest undermined class certification. *Id.* In *Moussouris*, the court's determination on conflicts, along with plaintiffs' failure to make out other Rule 23 factors, led the court to deny plaintiffs' motion for class certification. *Id.* at *30.

Here, Vassar anticipates that the record will demonstrate conflicts amongst the proposed class based on a majority of class members holding positions as Department Chairs, Program Directors and/or Full Professor members of the FASC. As explained above, faculty members who held these positions had varying levels of responsibility and involvement in hiring, compensation and promotion decisions for their fellow class members – which are the very decisions alleged to be discriminatory and which are at issue in this lawsuit.





This is not a situation where the named class plaintiff is an inadequate representative merely because of some idiosyncratic issue limited to just her particular circumstances or that could somehow be cured. Here, the alleged conflicts run rife through the class where a substantial number of its putative members are in conflict with the rest of the class. As one court described this type of internecine situation, such a conflict would be "insurmountable." *See Donaldson*, 205 F.R.D. at 568.

**C. Vassar's Motion Would Not Be Duplicative of Plaintiffs' Anticipated Motion For Class Certification**

To the extent Plaintiffs argue that Vassar's motion to deny class certification would be duplicative of Plaintiffs' anticipated motion for class certification, or Plaintiffs otherwise suggest some improper motive from Vassar of attempting to get "two bites at the apple" with respect to class certification, such arguments are misplaced. Vassar's motion would be tailored to the threshold issue discussed above which goes to class certification – particularly with respect to anticipated class conflicts. In contrast, Plaintiffs' motion for class certification will necessarily be directed largely at the underlying decisions made by those decision makers. These are not duplicative or "competing" motions; rather, Vassar will be presenting a narrow, threshold issue to the Court.

More specifically, Plaintiffs will need to show that class members' claims can be established through common proof. *Vulcan Soc. of Westchester Cty., Inc. v. Fire Dep't of City of White Plains*, 82 F.R.D. 379, 399 (S.D.N.Y. 1979) ("Without standing, one cannot represent a class, but standing to sue does not, of itself, support the right to bring a class action. All of the other prerequisite tests of Rule 23 . . . must be met."). Rule 23(a)(2) requires that there be questions of law or fact common to the class, and Rule 23(b)(3) requires those questions predominate. Fed. R. Civ. P. 23(a)(2), (b)(3).

In this case, Plaintiffs would be required to show common proof of their key allegations, including that: (1) "Vassar pays women less than men for substantially similar work;" (2) "Vassar has knowingly maintained unlawful pay disparities between women and men;" (3) "Vassar's uniform compensation, promotion, and evaluation policies and practices have a disparate impact on women;" and (4) "Vassar maintained uniform compensation, promotion, and evaluation policies and practices despite knowledge of their disparate impact on women;" among other allegations. SAC ¶ 78.

Defendant will not be making these arguments in its motion to deny class certification. Rather, Defendant's focus will be on the discrete issue identified above with respect to class conflicts, should the evidence support such a motion, as Defendant expects it will.

**D. Vassar's Motion Will Not Be a Motion to Strike**

As a final note, we want to make clear that Vassar's contemplated motion to deny class certification is not a motion to strike Plaintiffs' class claims from the complaint, which would be a motion pursuant to Fed. R. Civ. P. 12(f). Unlike a motion under Rule 12, Vassar intends to make an affirmative motion to deny class certification, which would be made after both parties have had a sufficient opportunity to conduct discovery on certification issues and otherwise prepare to litigate the motion. We thank Your Honor for your consideration of this request.





## II. Plaintiff's Position

Vassar's proposal of duplicative briefing on class certification is both inconsistent with Rule 23 and deeply inefficient. Even setting aside the legal infirmities with Vassar's proposal, adopting it would needlessly increase the cost of class certification by requiring the parties to submit (and the Court to review) six briefs on this topic instead of the usual three. Despite having more than a month to prepare its argument—and using five single-spaced pages to make it—Vassar still provides no justification for this wasteful deviation from the usual course.

### A. Because Plaintiffs Bear the Burden, Motions to Deny Class Certification Are Rare and Disfavored.

Vassar's proposal is manifestly unfair to Plaintiffs, who bear the burden at class certification. *See, e.g., Johnson v. Nextel Commc'ns Inc.*, 780 F.3d 128, 137 (2d Cir. 2015) ("The *party seeking class certification* bears the burden of establishing by a preponderance of the evidence that each of Rule 23's requirements have been met.") (emphasis supplied); *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011) ("A party seeking class certification must *affirmatively demonstrate* his compliance with the Rule.") (emphasis supplied).

It is therefore axiomatic that the plaintiff—not the defendant—is the movant at class certification. Vassar's own authorities make this point. *See* 5-23 Moore's Federal Practice 3d § 23.82 ("In actions involving a proposed plaintiff class, the named plaintiff generally moves for an order certifying the class."); *Fedotov v. Peter T. Roach & Assocs., P.C.*, 354 F. Supp. 2d 471 (S.D.N.Y. 2005) (acknowledging that certification is "normally accomplished by plaintiff's motion for certification"). Courts in this District have therefore noted the impropriety of Vassar's unusual proposal. *See, e.g., Cruz v. Hook-Superx, LLC*, No. 09 CIV. 7717, 2010 WL 3069558, at *4 (S.D.N.Y. Aug. 5, 2010) ("[P]rior to Plaintiffs' making a Rule 23 motion, the Court finds that there is no basis for granting Defendants' motion to deny class certification."). In *Cruz*, for example, the court did not conduct a full Rule 23 analysis—nor could it, without plaintiffs' motion—but merely rejected defendants' arguments before confirming that anything more would be premature. *Id*.

Unsurprisingly, then, Vassar cited only *one case* in support of its position when the parties met and conferred on this issue: *Fedotov*. Vassar relies heavily on *Fedotov* again now, and indeed, it remains the *only case* Vassar could locate in this District where the court permitted Vassar's unusual approach. For a comparative data point, there are nearly 700 class action dockets currently reflected in the S.D.N.Y. database. Moreover, in addition to being a two-decade-old outlier, Fedotov presented remarkably different circumstances. There, the court entertained the defendant's motion to deny because the case involved a narrow threshold issue that had nothing to do with Rule 23: whether, by virtue of a Chapter 7 bankruptcy filing through which the plaintiff's debts were discharged, he had sacrificed standing under the Fair Debt Collection Practices Act ("FDCPA"). 354 F. Supp. 2d 748. The case has no application here, nor do the only other two authorities—both out of District—that Vassar now cites. *See Russell v. Forster & Garbus, LLP*, No. 17-CV-4274(JS)(AYS), 2020 WL 1244804, at *1 (E.D.N.Y. Mar. 16, 2020) (permitting a motion to deny in another FDCPA case similar to and citing Fedotov, also involving debt collection); *Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 940 (9th Cir. 2009) (again citing Fedotov, in declining only to recognize "a per se prohibition against defendants filing of a motion to deny class certification").





The Second Circuit has never approved the unusual course of action Vassar proposes here. Moreover, the paucity of cases even addressing the question of whether a defendant can file a motion for *denial* of class certification demonstrates the extreme departure from the norm that Vassar is asking this Court to permit (in a case that is hardly unique). Vassar's "best" argument is that the motion it requests is *not per se prohibited*. That is truly no argument at all.

District courts have the inherent authority "to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Link v. Wabash R. Co.*, 370 U.S. 626, 630-31 (1962). Vassar has failed to demonstrate why the Court and parties should invest double the time and expense to address a single set of issues. Plaintiffs respectfully submit the Court should exercise its authority to reject this needless exercise and keep the parties focused on the relevant tasks to move the litigation forward.

**B. Vassar's Written Submission Confirms that Its Proposal Would Result In Duplicative Briefing, Not Efficiencies.**

There is no doubt that Vassar seeks to duplicate briefing on the same issues that will be covered by Plaintiffs' motion for class certification (and Vassar's opposition). During the October 15, 2024 status conference on this topic, Vassar identified its planned "conflicts" challenge to Plaintiffs as the sole justification for a second set of briefs. Herein, Vassar's argument for preemptive briefing is again predicated *exclusively* on its plan to argue that Plaintiffs "are in irreconcilable conflict with the other members of the putative class."

To be clear: Vassar has both the law and the facts completely wrong on this issue. But the only question currently before the Court is whether this issue alone warrants a departure from the general rule that plaintiffs are the moving party at class certification. Unquestionably, it does not. Vassar's "conflicts" argument is an attack on Plaintiffs' adequacy, which is one of the four requirements of Rule 23 that *Plaintiffs* will be required to address (and satisfy) in their motion. Vassar will have an opportunity to challenge Plaintiffs' adequacy in opposition to that motion. See Fed. R. Civ. P. 23(a)(4) (requiring *plaintiff* to demonstrate that she "will fairly and adequately protect the interests of the class").

To confirm this is true, the Court need look no further than Vassar's own (out-of-Circuit) authorities. Indeed, in *every single case* Vassar cites in support of its forthcoming "conflicts" argument, the court decided the issue on *plaintiffs'* motion for class certification—not defendant's. *See Moussouris v. Microsoft Corp.*, No. C15-1483JLR, 2018 WL 3328418, at *1 (W.D. Wash. June 25, 2018), aff'd, 799 F. App'x 459 (9th Cir. 2019) ("Before the court is Plaintiffs Katherine Moussouris and Holly Muenchow's (collectively, 'Plaintiffs') motion for class certification. (MCC ([Dkt. # 381].) Defendant Microsoft Corporation ("Microsoft") opposes the motion. (Resp. (Dkt. # 474).)."); *Randall v. Rolls-Royce Corp.*, No. 1:06-CV-860-SEB-JMS, 2010 WL 987484, at *1 (S.D. Ind. Mar. 12, 2010), aff'd, 637 F.3d 818 (7th Cir. 2011) ("Currently pending before the Court [is] Plaintiffs' Motion for Class Certification."); *Wagner v. Taylor*, 836 F.2d 578, 581-82 (D.C. Cir. 1987) (noting "Wagner [plaintiff] challenges [the court's] rejecting his motion for certification" and noting "Wagner [plaintiff] moved for class certification"); *Hughes v. WinCo Foods*, No. ED CV11-00644 JAK, 2012 WL 34483, at *1 (C.D. Cal. Jan. 4, 2012) ("Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiffs have moved to certify a class."); *King v. Enter. Rent-A-Car Co.*, 231 F.R.D. 255, 256 (E.D. Mich. 2004) ("This matter is before the Court on . . . Plaintiffs' Motion for Class Certification."); *Donaldson v. Microsoft Corp.*, 205 F.R.D. 558, 561 (W.D. Wash. 2001) ("Plaintiffs have brought a motion for class






certification."); Appleton v. Deloitte & Touche L.L.P., 168 F.R.D. 221, 223 (M.D. Tenn. 1996) ("Pending before the Court are the Plaintiffs' Motion for Class Certification (Docket No. 542), [and] the Defendant's Response thereto (Docket No. 798).").

To wit: Vassar relies heavily on *Moussouris*. In that case—as in *every single other case* Vassar cites—the "conflicts" argument was raised by a defendant under different facts and different laws in its opposition to *plaintiffs' motion for class certification*. *See Moussouris*, 2018 WL 3328418, at *28 ("Microsoft instead argues that adequacy is lacking because the proposed class presents irreconcilable conflicts of interest.") (citing pages of Microsoft's opposition brief). On the issue currently before the Court, Vassar does not even attempt to explain why the Court should do anything *other* than follow the logic of Vassar's own cases and set a briefing schedule related solely to Plaintiffs' motion for class certification.

Vassar also concedes that it is not seeking to improperly deny Plaintiffs an opportunity to themselves move for class certification—characterizing, albeit incorrectly, what "Plaintiffs' motion for class certification will necessarily be directed" toward. But this concession does not help Vassar's cause; it merely confirms that Vassar is asking the Court to receive six briefs on class certification instead of three. Yet there is nothing in Vassar's case law or inaccurate preview of Plaintiffs' motion that supports deviating from standard practice, much less by filing an entirely separate motion. Vassar provides zero justification for the addition of *three entire briefs* on what Vassar describes herein as a "narrow, threshold issue." In fact, the issue is not "threshold" at all.[1] And there is no precedent for or benefit to carving out just one element of Rule 23(a)—adequacy—to be briefed separately from every other element. Again, 100 percent of Vassar's authorities make clear that this "narrow" issue should be addressed, along with all other elements of Rule 23, in connection with Plaintiffs' motion for class certification.

Vassar's attempt to burden this Court with duplicative briefing should therefore be denied. It is akin to a plaintiff seeking to first file a motion to deny the defendant's as-yet-unfiled motion to dismiss—a patently inefficient cart before the horse. Vassar's aim is apparent: to frame Plaintiffs' facts as they would like, before responding to them. But Plaintiffs control how they plead, discover, and present their case, so that the Court understands the case Plaintiffs bring, not the case Vassar would prefer to defend. Nothing about a Rule 23 motion changes that basic principle. Accordingly, Plaintiffs respectfully request that the parties instead brief class certification according to the usual course: with Plaintiffs as the movants and Vassar as the respondent.

---

[1] The Federal Rules differentiate between what is and is not a threshold issue. This is why motions under Rule 12—i.e., to dismiss or strike pleadings or allegations—must be brought at the outset of a case. *See* Fed. R. Civ. P. 12(b), (f). As Vassar acknowledges, its "contemplated motion to deny class certification is not a motion to strike Plaintiffs' class claims" under Rule 12(f)—nor could it be, as the deadline for any such (ill-fated) motion long ago passed. *Id*. In other words, the deadline to bring a "threshold" attack on Plaintiffs' class allegations has already come and gone. *Id*.